STATE, Respondent v. MARTIN, Appellant

(187 N.W.2d 576)

(File No. 10644. Opinion filed June 1, 1971)

**Robert Amundson,** Asst. Atty. Gen., Pierre, for plaintiff and respondent; **Gordon Mydland,** Atty. Gen., on the brief.

**Joseph H. Bottum, III,** Salt Lake City, Utah, for defendant and appellant.

PER CURIAM.

Fast Foods, Inc., was incorporated under the laws of the State of South Dakota on June 16, 1966. The defendant, B. Bruce Martin, was the organizer, promoter and manager of Fast Foods from its inception. He was not an officer, director or stockholder of the corporation. He was not licensed by the Commissioner of Securities of the State of South Dakota to sell the corporate stock. In addition, he was interested in other corporations by and through which the jury could find he converted money from the sale of capital stock in Fast Foods to himself and that Fast Foods was organized and operated to carry out a scheme to defraud persons by inducing them to invest therein.

On the night of March 17, 1967, Jarvis Wallum, who later testified for the state, and William Dillon, who later testified for the defense, both licensed by the Commissioner of Securities of South Dakota to sell Fast Foods stock, called upon Mrs. Margaret Schofield at her home northeast of Midland for the purpose of selling stock to her in Fast Foods. During this contact the two agents learned that she was having trouble with the federal government about the federal estate tax in the probate of her father's estate.

The next evening about 9 p.m. the defendant and William Dillon called at the Schofield home—the defendant representing that he was an authority on tax matters and was there to help her with her problem with the federal govern-

ment. Mrs. Schofield then proceeded to show the papers and correspondence that she had about the federal estate tax and the defendant examined everything and advised her that it didn't look too bad to him and he thought he could get her out of the matter in 30 days. By this means the defendant gained Mrs. Schofield's trust and confidence, and purported to put her under obligation to him. He then proceeded to sell her stock in Fast Foods saying, "if I can do you a good deed by getting you out of this tax matter * * * you are in * * * you will have to do me a favor. * * * (the) shares on this Fast Foods * * * are $3.00 now * * * they are going to come up (in a week) between five and six dollars." The defendant, having applied the technique of the confidence man, then proceeded to apply his brand of high pressure salesmanship as follows—he told her:

1. That the stock was then selling for $3 per share, but in a week or two it would be selling for $6 per share.

2. That she could get her money back any time she needed or wanted it.

3. That her money would earn a great deal more invested in their stock than in a C.D. in the bank.

4. That Fast Foods owned three restaurants. In fact, the restaurants were owned by the defendant himself.

The defendant insisted that Mrs. Schofield purchase the stock, keeping the Schofields up the entire night.

■ Throughout the cases on fraudulent sales of stocks it is generally held that a failure to make disclosure by withholding facts, which in good conscience should be revealed, is as serious a misrepresentation as an actual oral or written misrepresentation itself. Texas Continental Life Ins. Co. v. Bankers Bond Co., D.C., 1960, 187 F. Supp. 14; Charles Hughes & Co. v. Securities and Exchange Com'n, 2 Cir., 139 F.2d 434, certiorari denied, 321 U.S. 786, 64 S.Ct. 781, 88 L. Ed. 1077; Securities and Exchange Com'n v. Universal Ser-

vice Ass'n, 7 Cir., 106 F.2d 232. Within the compass of this rule, we note the following omissions:

1. The prospectus should have been and was not shown to Mrs. Schofield.

2. The defendant should have revealed to Mrs. Schofield the transfer to an Arizona corporation of large sums of money from the sale of capital stock.

3. The defendant should have explained to Mrs. Schofield that the only income of the corporation as of that date was $7,000 from the sale of franchises to one other person and himself. All other receipts came from the sale of capital stock.

4. Defendant should have explained the large sum out of the capital stock that was being paid for promotion, advertising and equipment.

About six o'clock the next morning, Mrs. Schofield gave the defendant her check for $6,000 for 2,000 shares of stock in Fast Foods. Defendant then woke up his associate, William Dillon who slept through the sale, and had him sign the stock purchase agreement, Dillon being a licensed salesman and the defendant not being so licensed by the South Dakota Securities Commission. In the course of the months that followed, Mrs. Schofield repeatedly asked for the return of her money without success. On her last contact with him, defendant even denied that he knew her.

On September 28, 1967, Margaret Schofield swore to a complaint charging that on March 18, 1967, the defendant did engage in a transaction, practice or course of business in the sale of securities which did work or tend to work a fraud and deceit upon her, Ch. 270, § 23(5), S.L.1961, and a second count to the effect that on that date the defendant had sold stocks, not having been licensed to do so by the Commissioner of Securities of the State of South Dakota. A preliminary hearing was held and the defendant was bound over to the circuit court for trial. An information was filed by the

state's attorney of Stanley County and upon conviction by a jury the defendant has appealed, assigning 23 errors. Counsel consolidates the 23 errors into 10 questions in his brief.

The first question presented by the defendant is quoted at length as follows:

"1. Are the statutes upon which the Complaint and amended Information were based unconstitutional for the reason that said statute fails to define the necessary elements of a crime and is too vague and indefinite to fully apprise the defendant of the nature and elements of the crime of which he was accused, and accordingly a denial of due process of law?"

Counsel argues that the statute must be held void as a denial of due process of the law for two reasons:

(1) It forbids an act in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application, and

(2) The statute makes no provision for and requires no intent to work a fraud or deceit on the part of the accused.

The statute under which the defendant was prosecuted was enacted by the legislature as Ch. 270, S.L. 1961, and as to pertinent parts provides as follows:

"55.9913 Violations. It shall be a violation of the provisions of this chapter for any person:

\*        \*        \*        \*        \*        \*

(2) To act as an agent or a broker unless registered as such, where such registration is required, under the provisions of this chapter; (Now SDCL 47-31-124)

\*        \*        \*        \*        \*        \*

(5) To engage in any transaction, practice or course of business in the sale or purchase of securities which works or tends to work a fraud

or deceit upon the purchaser or seller thereof;" (Now SDCL 47-31-128).

This statute was adopted from the model Blue Sky Act, Uniform Laws Annotated, which in turn was taken from the Federal Securities Act of 1933. See generally 47 Am.Jur., Securities Acts, p. 563.

15 U.S.C.A. § 77q., Fraudulent interstate transactions, as to pertinent parts provides as follows:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

\*    \*    \*    \*    \*    \*

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

The difference between the federal act and the South Dakota statute is slight. Section 77q(a), supra, has been the subject of numerous federal and state decisions; and the constitutionality thereof has long been established.

In the case of Coplin v. United States, 1937, 9 Cir., 88 F.2d 652, it was held that § 77q(a), supra, is sufficiently definite and certain to meet constitutional requirements that accused be informed of the nature and cause of the accustion. In Queen v. Commonwealth, Ky., 434 S.W.2d 318, in construing the Kentucky statute, KRS 292.320, identical to the federal act, the court held:

"The appellant argues that KRS 292.320 is so vague, ambiguous, indefinite and uncertain as not to constitute a valid basis for a criminal prosecution. A similar attack on the substantially identical provision of the Federal Securities Act was rejected by a federal court in Coplin v. United States, 9 Cir., 88 F.2d 652, and we concur in the reasoning of that

decision. See also Roberts v. United States, 6 Cir., 226 F.2d 464."

■ We see nothing vague or ambiguous about SDCL 47-31-128. Admittedly it is broad and comprehensive but the sale of securities is complicated and complex. "Transaction" refers to the sale of securities; "practice" is the method of sale, in this case the employment of the "confidence game" technique and the high pressure salesmanship; "course of business", the transfer of large sums from the sale of capital stock to the Arizona corporation. The statute was clearly designed and intended to prohibit exactly the offense with which the defendant was here charged.

■ In the case of United States v. Lilley, 1968, D.C., 291 F.Supp. 989, the court stated:

" * * * Congress intended to charge every man with knowledge of the standards prescribed in the securities acts themselves."

If any individual is engaged in the sale of securities, it is incumbent upon him if he does not understand the law to first ascertain both its content and its meaning. There is no reason to believe that the defendant did not know and fully understand what he was doing. The purpose of the Blue Sky laws is for the protection of the public. It is a public welfare statute.

In the case of People v. F. H. Smith Co., 230 App.Div. 268, 243 N.Y.S. 446, the court said:

"The statute is remedial in its nature, and was passed to protect the inexperienced, confiding, and credulous investor, and save him from his own foolish cupidity. It should therefore be liberally and sympathetically construed in order that its beneficent purpose may, so far as possible, be attained."

See also Annot., 87 A.L.R. 42, "Blue Sky Laws".

One of the leading cases on the question of "intent" comes from the State of Iowa. State v. Dorby, 1933, 217 Iowa 858, 250 N.W. 702. In that case the defendant was

the president of an Iowa corporation and for the purpose of securing permission for the issuance of additional securities he signed and verified a written statement filed with the Secretary of State, the substance of which was to show the financial condition of the corporation. It was as to this statement that the prosecution against Dorby was instituted with the claim that it was false. The case was tried and submitted to the jury on the theory that if the statement was in fact false, this was sufficient to violate the statutes. The contention of the defendant was that the statement must be knowingly false in order to violate the statute. The court held the knowledge of the falsity under the Iowa statute was not essential.

The court further held that it is quite universally recognized that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by a matter of construction from the language of the act in connection with its manifest purpose and design. See State v. Dunn, 202 Iowa 1188, 211 N. W. 850.

In the case of Lolkus v. Vander Wilt, 1966, 258 Iowa 1074, 141 N.W.2d 600, the Supreme Court of that state held:

"While in some situations proof of knowledge or intent, i. e., scienter, is necessary, the legislature may forbid the doing of an act and provide for the consequences without regard to the intent or knowledge of the doer. State v. Dahnke, 244 Iowa 599, 57 N.W.2d 553; State v. Dobry, 217 Iowa 858, 250 N.W. 702; State v. Schultz, 242 Iowa 1328, 50 N.W. 2d 9; and State v. Drummer, 254 Iowa 324, 117 N. W.2d 505.

"As quoted from appellants' brief, supra, the purpose of the Blue Sky Law is to protect the public. Proof of knowledge is not required in a criminal prosecution for violating the Blue Sky statutes. A criminal prosecution against defendants for acts

admitted here would not have depended on proof of knowledge."

■ Furthermore, it is obvious that the legislature did not intend to provide for and purposely omitted intent as an element of the crime in paragraph (5) of SDC 55.9913 as amended, supra (now SDCL 47-31-128). In paragraph (7) of the same statute (now SDCL 47-31-130) the legislature did provide for intent or guilty knowledge as an element. In State v. Dobry, supra, the Iowa court stated:

> "It is apparent that the Legislature had this term 'knowingly' before it in the preparation of this law, and the fact that it used it in the last-quoted section would naturally carry with it the idea that it purposely omitted it in the first quoted section."

After the arraignment and before the trial, motion was made by the state's attorney in chambers to amend the information to provide that "willfully, unlawfully and feloniously" in Count I, and the acts complained of were committed "willfully and unlawfully" in Count II. At that time the defendant moved that the case then be referred back for further preliminary hearing as if such amendment was granted it would substantially change the crime of which the defendant was accused. The court granted the state's motion to amend and the defendant's motion for further preliminary hearing was denied.

■ The defendant on appeal argues that the inclusion of the word "willfully" injected the issue of a new or second crime in the case. The word "willfully" is defined in SDCL 22-1-2 as follows:

> "Terms used in this title, unless the context otherwise plainly requires, shall mean:
>
> (1) When applied to the intent with which an act is done or omitted:
>
> *     *     *     *     *     *
>
> (e) 'Willfully' implies simply a purpose or willingness to commit the act or the omis-

sion referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage".

We fail to see where the amendment of the information and the inclusion of the word "willfully" injected any new charge against the defendant. Furthermore, there was considerable evidence submitted at the preliminary hearing as to the willfulness of the defendant's act and, therefore, resubmitting the case for an additional preliminary hearing would have been merely repetitious. In the case of State v. Brown, 84 S.D. 201, 169 N.W.2d 239, this court stated:

"As its name implies a preliminary hearing is merely a prelude to trial. The State is not obligated to prove guilt of the accused beyond a reasonable doubt. It provides an opportunity to screen out false and groundless accusations. Its sole purpose is to ascertain whether or not there is probable cause to believe a crime has been committed and if the accused committed it."

■ The defendant objected to the admission of the corporation ledger and the corporation journal of receipts and disbursements, Exhibits 2 and 3. Foundation was laid for such introduction by the testimony of Reuben Deutscher, the president of the corporation. The objection is without merit. Exhibits 2 and 3 were properly admitted under the Uniform Business Records as Evidence Act, SDCL 19-7-11, and no abuse of discretion on the part of the trial court is shown. Such admission will not be disturbed on appeal. See Bentz v. Cimarron Insurance Co., 1962, 79 S.D. 510, 114 N.W.2d 96, and Plank v. Heirigs, 1968, 83 S.D. 173, 156 N. W.2d 193.

Likewise, there is no merit to the objection to the testimony of Reuben Deutscher and the witness, Albert Petersen, concerning the contents of Exhibits 2 and 3.

■ Immediately following a recess on the second day of the trial, the defendant's attorney reported that during such recess he had observed Jarvis Wallum, a witness for the state, engaged in conversation with three of the jurors.

The court then called Mr. Wallum into chambers and questioned him about the matter and made a record. Mr. Wallum denied that he had been discussing the case with the jurors and it appears from this testimony that he was merely listening to their conversation about a matter wholly unrelated to the case. The defendant presented no affidavit or any evidence that contradicted or refuted Wallum's testimony about the matter. The state showed the harmless nature of the conversation between the jurors and if Wallum did participate therein, it is not shown by any competent evidence on record. The presumption of prejudice to the defendant, if any, was rebutted by the state's evidence. See State v. Brown, 1969, 84 S.D. 201, 169 N.W.2d 239.

█ The state's attorney in his closing argument made the following statement:

"May it please Your Honor, counsel, just a few remarks, ladies and gentlemen, and then we will let you go. We have been here a long time and we want to thank you for the time that you have spent here. Certainly it is common practice for a lawyer to do one of many things when he doesn't have any evidence to talk about. In the first place, he tries to hang the complaining witness, tries to make her out to be a liar. Well, ladies and gentlemen, I think you have a great deal more intelligence than that."

At this point the defendant's attorney interrupted and made the following objection:

"Just a moment, Your Honor, I am going to have to object, as much as I hate to interrupt again, it is my duty as counsel. The burden—the defendant has no burden to produce any evidence, he need have no evidence to discuss, I must move for a mistrial. Ask that the jury be admonished first, to disregard any statement by counsel and again in light of the instruction that the defendant in any criminal case has no burden to produce any evidence, it is highly prejudicial."

The court made the following ruling on the objection:

> "You have made your point, objection over-
> ruled. You may proceed, counselor."

Counsel for the defendant urges rather vigorously that this constituted reversible error on the part of the state's attorney and in support of his arguments cites the case of State v. Jones, 1907, 21 S.D. 469, 113 N.W. 716, where it is stated:

> "* * * and has been uniformly held reversible er-
> ror for the prosecution, or even the court, to call the
> attention of the jury in any manner to the fact that
> the accused has not testified."

It would seem that the statement of the state's attorney was harmless enough in itself and if it does call attention to the fact that the defendant has not testified, it is in a most re-mote manner.

The defendant called one witness in his defense, William Dillon, who was present at the Schofield residence at the time the defendant sold the stock. Dillon attempted to re-fute Mrs. Schofield's testimony as to whether he had slept through most of the conference, but the jury chose to be-lieve Mrs. Schofield. The balance of the defendant's defense is based on cross-examination of the state's witnesses. The word "evidence" does not necessarily refer to the testimony or lack of testimony of the defendant. The defendant's at-torney is the one who put such an interpretation on the state's attorney's statement that defendant is now objecting to and emphasized the same to the jury. In this connection it appears by Instruction 18 the court advised the jury:

> "Every defendant in a criminal case has the
> absolute right not to testify. You must not draw any
> inference of guilt against the defendant because he
> did not testify."

The defendant requested 11 instructions. On appeal he argues that the court erred in refusing to give four of these. However, a close examination of the requested instructions and those given reveals that the instructions given by the

court include by one means or another all instructions requested.

The defendant then objects to five of the instructions that were given as prejudicial error.

The trial court instructed the jury at length, properly placing the burden of proving the essential elements of fraud on the state. The instructions covered the elements of fraud, the duties of the state, elements of deception and proof of reliance thereon by the complaining witness. We find no error therein.

Affirmed.

RENTTO, P. J., and HANSON, BIEGELMEIER and WOLLMAN, JJ., concur.

WINANS, J., not participating.