**In the Matter of ROYAL PLASTICS, INC.'S REQUEST FOR REFUND OF STATE AND MUNICIPAL SALES AND USE TAXES.**

**Nos. 17138, 17158–a–FEH.**

Supreme Court of South Dakota.

Argued Feb. 13, 1991.

Decided June 12, 1991.

Timothy T. Weber, Dept. of Revenue, Pierre, for appellant; Roger A. Tellinghuisen, Atty. Gen. Pierre, on brief.

Catherine A. Tanck, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

The Department of Revenue (Department) found Royal Plastics, Inc. (Royal) subject to additional sales and use tax following a routine audit of Royal's books and records. After an administrative proceeding, the Secretary of Revenue (Secretary) affirmed the Certificate of Assessment in its entirety. This decision was appealed to the Circuit Court of the Third Judicial Circuit. The circuit court reversed the Secretary's order in part and ruled that:

(1) SDCL 10–46–5 applies to a manufacturing contractor such as Royal;

(2) For capitalized molds, Royal's fabrication costs were not subject to use tax;

(3) For capitalized molds, set up and tooling charges to out-of-state customers were not subject to sales or use tax;

(4) For capitalized molds, Royal's fixed overhead allocations are not an allowable exclusion from taxation as fabrication costs;

(5) Molds to produce sold by Royal to out-of-state customers and used by Royal, were subject to sales tax; and

(6) For molds to produce, set up and tooling charges which Royal charged to out-of-state customers were subject to sales tax as part of gross receipts from the sale of the mold to produce.

On appeal, the Department presents three legal issues as follows:

(1) Was Royal a contractor within the purview of SDCL 10–46–5, thereby entitling it to exclude its costs of fabrication from tax? We hold that it was.

(2) Are sales of molds to produce, to out-of-state customers, retail sales in South Dakota subject to sales tax? We hold that they are.

(3) Are set up and tooling charges charged to out-of-state customers subject to sales tax? We hold that they are not.

■ Royal filed a Notice of Review on May 24, 1990. The issue raised by Royal is: Did the circuit court incorrectly determine that the fixed overhead costs, which Royal allocated to its capitalized molds, were not fabrication costs excludable under SDCL 10–46–5? We decline to address the Notice of Review issue. SDCL 15–26A–60(6) and SDCL 15–26A–61 require authority in support of an argument. Royal failed to comply with this section.

We affirm.

## FACTS

Royal is located in Brookings, South Dakota. Its business consists of manufacturing molded plastic parts. Royal has customers both in and out-of-state, who are mainly in the business of manufacturing equipment.

Royal produces molds which fall within two categories. "Molds to produce" are produced to the customer's specifications at a price determined on a contract basis. The customer owns the mold but it is kept at Royal's plant in Brookings. Molds to produce are not depreciated by Royal. Royal does not charge sales tax to its out-of-state customers on molds to produce although it charges sales tax to its South Dakota customers. The second type of molds are "capitalized molds." These types of molds are fabricated and owned by Royal. They are depreciated as capital equipment. These molds are unique to the plastic part produced, and when the contract for manufacture of parts is terminat-

ed, the mold is scrapped by Royal. Royal does not pay sales or use tax on the capitalized molds.

The Department of Revenue conducted a sales and use tax audit of Royal for the period of March 1, 1985 through February 29, 1988. At the conclusion of the audit, Royal was assessed additional state sales and use taxes plus interest of $27,956.00.

## DECISION

I. *Royal is a contractor within the purview of SDCL 10–46–5. Therefore, it is entitled to exclude fabrication costs from tax.* [1]

■ The standard of review for administrative appeals is governed by SDCL 1–26–36. We review the record in the same light as does the trial court and determine whether or not the administrative agency's decision was clearly erroneous in light of all the evidence. *Deuschle v. Bak Const. Co.*, 443 N.W.2d 5, 6 (S.D.1989). Questions of law are fully reviewable. When the issue is a question of fact, the clearly erroneous standard applies. *In re State and City Sales Tax Liability of Quality Service Railcar Repair Corp.*, 437 N.W.2d 209 (S.D.1989). Also, it should be noted that in construing sales and use tax statutes, statutes imposing a tax are construed liberally in favor of the taxpayer. *Nash Finch Co. v. South Dakota Dept. of Rev.*, 312 N.W.2d 470 (S.D.1981). However, statutes allowing a tax exemption are strictly and narrowly construed in favor of the taxing power and are given a reasonable, natural and practical meaning to effectuate the purpose for which the exemption was granted. *KMART Corp. v. S.D. Dept. of Revenue*, 345 N.W.2d 55 (S.D.1984).

The statute in question, SDCL 10–46–5, states: [2]

1. The circuit court directed counsel for both parties to submit proposed findings pursuant to SDCL 15–6–52(a). The Department's ninth proposed conclusion of law states: "Royal is a contractor within the meaning of SDCL 10–46–5 when it fabricates capitalized molds for use in the performance of its contract and is allowed to exclude its fabrication costs from the fair market value of the capitalized molds." Al-

though by proposing this conclusion of law the Department has technically waived its right to appeal this issue under SDCL 15–6–52(a), we will address this issue nonetheless, so as to clarify the statute.

2. In 1977, SDCL 10–46–5 was amended by Chapter 99, § 2 of the 1977 Session Laws. The following language was added:

If a contractor or subcontractor uses tangible personal property in the performance of his contract or to fulfill contract or subcontract obligations, whether the title to such property is in the name of the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the titleholder of such property would be subject to pay the sales or use tax, such contractor or subcontractor shall pay a tax at the rate prescribed by § 10–45–2, measured by the purchase price or fair market value of such property, whichever is greater, unless such property has been previously subjected to a sales or use tax, in this state and the tax due thereon has been paid. *However, if the contractor or subcontractor fabricates tangible personal property for use in the performance of his contract, fair market value excludes the value of the contractor's or subcontractor's fabrication costs.* (emphasis added).

■ At the circuit court level, the Department contended that SDCL 10–46–5 pertains only to construction contractors and thus Royal is not entitled to exclude fabrication costs from fair market value of the molds. However, the circuit court disagreed with the Department, concluding that Royal is a "contractor" within the plain meaning of the statute. Therefore, the circuit court determined that Royal is entitled to the benefits of SDCL 10–46–5 as to capitalized molds. We agree.

Neither SDCL 10–46–5 nor any other statute specifically define the term "contractor." This Court did consider the purpose of enacting SDCL 10–46–5 in *Friessen Construction Co. v. Erickson,* 238 N.W.2d

278 (S.D.1976). In *Friessen,* SDCL 10–46–5 was construed to impose a use tax on contractors who use personal property in the performance of a contract, even though the property may not be owned by the contractor. However, the last sentence was not interpreted by the *Friessen* court because it was not part of the statute at the time that case was decided. It states explicitly, that if a contractor fabricates personal property for use in the performance of his contract, then fair market value excludes the value of the contractor's fabrication costs. Therefore, since this statute imposes a tax, it is to be construed liberally in favor of Royal. *Nash Finch Co., supra.*

■ We agree with the circuit court that there is no reason to distinguish between "construction contractors" and "manufacturing contractors" under SDCL 10–46–5. Contractor defined under common law is one who contracts to supply labor and materials. *County of Hennepin v. Minnesota,* 263 N.W.2d 639 (Minn.1978). The words of the statute should be given their plain meaning. *In re Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984). Therefore, as to capitalized molds, Royal is allowed to exclude its fabrication costs under SDCL 10–46–5.[3]

II. *Sales of "Molds to Produce" to out-of-state customers are sold at retail and subject to sales tax.*

■ The Secretary determined that the molds to produce, sold by Royal to its out-of-state customers and used by Royal in the manufacture of plastic part pieces, are sold at retail in South Dakota and are sub-

When a sectional home is permanently affixed to real property, it is not a vehicle subject to registration under chapter 32–3, and shall be classified as real property. A contractor who erects such a home must hold a sales or use tax license and pay use tax based upon the fair market value of the raw materials used to construct and erect the home. For the purpose of this section, "sectional home" means any home prebuilt in part or in whole for the purpose of permanent placement on a foundation. A mobile home as defined by subdivision (1) of § 34–34A–1 is not a sectional home.

A 1982 amendment established SDCL 10–46–5 in its present form by deleting all references to sectional homes. The last sentence in SDCL 10–46–5 was added in 1982. At the same time, a definition of "fair market value" was added to SDCL 10–46–1.

3. Excluded fabrication costs include wages payable to Royal's employees attributable to the fabrication of the molds, the cost of the raw materials if sales or use tax has already been paid thereon, and any payment to other fabrication subcontractors or sales or use tax has been paid thereon.

ject to sales tax. The circuit court affirmed this conclusion stating that the sales take place in South Dakota; therefore, it reasoned the gross receipts are subject to sales tax without exclusion of fabrication costs. It determined that the sales of these molds are not exempt from taxation because there is no immediate physical delivery of the mold to a point outside the state pursuant to a contractual obligation. We agree.

Gross receipts from the sale of tangible personal property in South Dakota are not subject to sales tax, if the seller has an obligation under the sales agreement to deliver the tangible personal property out of state and the property will not be returned to this state. ARSD 64:06:01:24. In the present case, the sales of molds to produce take place in South Dakota. Royal is not contractually obligated to immediately deliver the molds to the out-of-state customer. Therefore, the gross receipts from the sale of the "molds to produce" are subject to sales tax without exclusion of fabrication costs.

III. *The circuit court correctly determined that the set-up and tooling charges*[4] *charged to out-of-state customers, as they pertain to capitalized molds, are not subject to sales tax.*

■ The Secretary held that Royal was subject to tax for the setup charges and tooling charges that are performed in South Dakota. The circuit court affirmed this with regard to molds to produce. However, the circuit court held that as such charges pertain to capitalized molds they are excluded under SDCL 10–46–5 to the extent they represent wages to Royal's employees, the cost of raw materials if tax had already been paid thereon, or payments to subcontractors if tax had been paid thereon. We agree.

The set-up and tooling charges as they pertain to capitalized molds are fabrication

costs and therefore excludable under SDCL 10–46–5 per our reasoning explained under issue 1. Therefore, it will not be discussed further.

■ As to molds to produce, our conclusion is different. Royal contends that the charges are not exempt under SDCL 10–45–12.3.[5] It relies on *In re State and City Sales Tax Liability of Quality Service Railcar*, 437 N.W.2d 209 (S.D.1989) for its position that the profits to be derived from the setup and tooling services occur at the out-of-state customer's location. We disagree. For this statute to apply, the "beneficial use" must occur *entirely* outside the State of South Dakota. We find no evidence that these services were transferred out of the state. All use of these services occurred in South Dakota. Royal has failed to show that the entire benefit occurred elsewhere. Under all the circumstances of this case, it is clear that SDCL 10–45–12.3 does not operate to exempt set-up and tooling charges to an out-of-state customer.

Thus, we affirm the decision of the circuit court in its entirety.

MILLER, C.J., WUEST, J., and HERTZ, Acting J., concur.

SABERS, J., concurs in part and concurs in result in part.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (concurring in part and concurring in result in part).

I do not agree with the majority opinion's conclusion that Royal waived its notice of review argument by failing to cite authority. My reasons are:

---

4. "Set-up" charges are all costs attributable to services performed in readying machinery and equipment for production. "Tooling" charges are incurred by the customer for services performed when Royal modifies the customer's mold to produce after its original manufacturer.

5. SDCL 10–45–12.3 states:

   The tax by this chapter on persons performing services does not apply to transactions if the beneficial use of the service occurs entirely outside the state.

(1) Royal cited to the statute, SDCL 10–46–5, but there are no cases annotated on that statute.

(2) Royal's argument on fixed overhead costs was similar to its other arguments where authorities were cited.

(3) Royal's argument was not even countered by Department, which never filed a reply brief.

As stated in my writing in *Peterson v. Safeway Steel Scaffolds Co*, 400 N.W.2d 909, 916 (S.D.1987), "this court is overreacting to SDCL 15–26A–60 which results in decisions that rely too heavily on waiver of a point or argument by failure to cite authorities." We should follow the rule of *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D.1988), which held that a wife in a divorce action did not waive the issue of division of personal injury settlement proceeds by failing to cite authority for her arguments because the question was sufficiently one of first impression. *Id.*, at 570–571.