STATE of South Dakota, Plaintiff
and Appellant,

v.

Ivan DORHOUT, Defendant and Appellee.

No. 18249.

Supreme Court of South Dakota.

Argued Nov. 30, 1993.

Decided March 9, 1994.

Rehearing Denied April 15, 1994.

Mark Barnett, Atty. Gen., David D. Wiest, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Todd C. Miller, Sioux Falls, for defendant and appellee.

SABERS, Justice.

State appeals the dismissal of sales tax charges against Defendant. We reverse.

### Facts

Defendant Dorhout owns Town and Country Implement (T & C), a farm implement dealership in Rock Valley, Iowa. On March 10, and June 5, 1989, Department of Revenue (Department) sent letters to Dorhout informing him that he must be licensed to engage in business in South Dakota and remit sales tax to the State. Dorhout did not respond to either letter. A third letter, known as the "last chance letter," was sent on August 29, 1989. It informed Dorhout that the matter was being assigned to the Department's Accounts Receivable Division and that failure to comply could subject him to Class 6 Felony charges. Dorhout responded and acknowledged receipt of the two previous letters. Grand Jury testimony indicates that at this time, Dorhout told Deputy Director Alan Morris that he thought he could avoid paying South Dakota sales tax by not including delivery charges on the invoice.

In October, 1989, Dorhout applied for a South Dakota sales tax license. As part of routine Department procedure, it was explained to Dorhout that he was liable for sales tax on deliveries made into the state (point of possession rule). He was also informed that he needed to file back tax returns. Dorhout filed a sales tax return for the January through August, 1989 time period and then began filing bi-monthly sales tax returns. After the Department received numerous returns indicating zero gross sales, the Department commenced an investigation.

The Department audited T & C for the period from January 1, 1988 through December 31, 1990. The audit identified 36 alleged sales and deliveries of farm equipment to South Dakota buyers and the sale within South Dakota of one trade-in.

Dorhout was charged by indictment with one count of failure to file a sales tax return (SDCL 10–45–48.1(4)), one count of failure to pay sales tax (SDCL 10–45–48.1(2)), and six counts of filing a false or fraudulent return in attempting to defeat or evade sales tax (SDCL 10–45–48.1(1)). Dorhout filed a Motion for Dismissal of the Indictment as a violation of the Commerce Clause of the United States Constitution. Dorhout's motion was granted. Department filed a Motion for a Rehearing on Dorhout's Motion to Dismiss, which was granted. After the rehearing, the trial court denied Dorhout's Motion to Dismiss. Dorhout filed a Renewal of Motion for Dismissal of the Indictment on new grounds. His motion was granted. Department appeals.

Dorhout alleged in his Renewal of Motion for Dismissal that, if he was liable to Department for any tax, it was a use tax, not a sales tax, and that Department was proceeding under a new point of law. The trial court agreed and granted Dorhout's Motion to Dismiss because

> Dorhout did not have fair warning that his conduct was criminal; in addition, even if by chance the State's position is correct, Dorhout could not have ascertained the legal standards applicable to his conduct. Therefore, a criminal proceeding is not the proper forum to proceed with this case as charged.

 SDCL 23A–8–2 provides nine grounds under which an indictment may be dismissed on motion of defendant.[1] *State v. Schladweiler*, 436 N.W.2d 851, 853 (S.D. 1989). These statutory grounds are exclu-

---

1. SDCL 23A–8–2 provides:

 Upon motion of a defendant made pursuant

 to subdivision (1), (2) or (3) of § 23A–8–3, the

sive, *State v. Hoekstra,* 286 N.W.2d 127, 128 (S.D.1979); *see generally State v. Bingen,* 326 N.W.2d 99, 100 (S.D.1982) (grounds for dismissing an indictment are set forth in SDCL 23A–8–2), and "the trial court cannot inquire into the legality or sufficiency of the evidence upon which an indictment is based when considering a dismissal under SDCL 23A–8–2." *Schladweiler,* 436 N.W.2d at 854 (citing *Hoekstra,* 286 N.W.2d 127). The trial court's letter granting Dorhout's Motion to Dismiss fails to specify the ground upon which the motion was granted. Because these statutory grounds are exclusive, and "[t]he indictment in question does not appear vulnerable under any of the grounds contained in the statute," *Bingen,* 326 N.W.2d at 100, the trial court's order dismissing the indictment could be reversed for this reason alone. We, continue, however, to the merits.

SDCL 10–45–2 provides:

There is hereby imposed a tax upon the privilege of engaging in business as a retailer, a tax of four percent upon the gross receipts of all sales of tangible personal property consisting of goods, wares, or merchandise, except as taxed by § 10–45–3 and except as otherwise provided in this chapter, sold at retail in the state of South Dakota to consumers or users.[2]

And SDCL 10–45–1(8) provides:

"Sale," any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration.

As this court stated in *Department of Revenue v. Sanborn Tel. Coop.,*"[w]hether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court." 455 N.W.2d 223, 225 (S.D.1990).

The United States Supreme Court discussed the difference between a sales tax and a use tax in *McLeod v. J.E. Dilworth Co.*

A sales tax and a use tax in many instances may bring about the same result. But they are different in conception, [and] are assessments upon different transactions[.] A sales tax is a tax on the freedom of purchase[.] A use tax is a tax on the enjoyment of that which was purchased.... Though sales and use taxes may secure the same revenues and serve complementary purposes, they are, as we have indicated, taxes on different transactions and for different opportunities afforded by a State.

322 U.S. 327, 330–31, 64 S.Ct. 1023, 1025–26, 88 L.Ed. 1304 (1944). *See also,* Karen R. Twitchell, *Imposition of the Duty to Collect State Use Taxes: Constitutional Prohibi-*

---

court must dismiss an indictment or information in any of the following cases:

(1) When it is not found, endorsed, and presented or filed as prescribed by this title;

(2) When the names of the witnesses are not inserted at the foot of the indictment or information or endorsed thereon;

(3) When it does not substantially conform to the requirements of this title;

(4) When more than one offense is charged in a single count;

(5) When it does not describe a public offense;

(6) When it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, or other bar to the prosecution;

(7) When the grand jury which filed the indictment had no legal authority to inquire into the offense charged because it was not within the jurisdiction of the grand jury or because the court was without jurisdiction of the offense charged;

(8) When a person was permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, except as provided in § 23A–5–11; or

(9) When a defendant charged by information did not have or waive a preliminary hearing before the information was filed.

**2.** The tax rate on farm machinery is three percent under SDCL 10–45–3, which provides:

There is hereby imposed a tax of three percent on the gross receipts from the sale or resale of farm machinery and attachment units other than replacement parts; or irrigation equipment used exclusively for agricultural purposes by licensed South Dakota retailers; provided, however, that whenever any trade-in or exchange of used farm machinery is involved in the transaction, the tax shall only be due and collected on the cash difference.

*tions are no Longer Valid in Mail Order Sales*, 32 S.D.L.Rev. 93, 94–95 (1987).[3]

As indicated in *McLeod*, a sales tax and a use tax are "assessments upon *different* transactions." *McLeod*, 322 U.S. at 330, 64 S.Ct. at 1025 (emphasis added). While *In re the State Sales or Use Tax Liability of Webber Furniture*, 290 N.W.2d 865 (S.D.1980), appears to support Dorhout's contention that an out-of-state retailer delivering merchandise in South Dakota is liable for use tax rather than sales tax, *Webber* is distinguishable. The issue in *Webber* was whether the appellant was a "retailer maintaining a place of business in the state" as defined in SDCL 10–46–1(7) and SDCL 10–46–20. The issue of whether Webber was liable for sales tax (rather than use tax) was not before the court. *Sturtz v. Iowa Dept. of Revenue*, 373 N.W.2d 131 (Iowa 1985), cited by the State, is more persuasive authority.

In *Sturtz*, a manufacturer of modular homes in Wisconsin was held liable for Iowa sales tax because the sales to a wholesale distributor in Iowa were consummated when the manufacturer delivered the homes on its trucks to the site. In support of its holding, the Iowa Supreme Court relied upon Iowa Code § 554.2401(2)(b). SDCL 57A–2–401(2) is identical and provides:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
> (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title

passes to the buyer at the time and place of shipment; but
> (b) If the contract requires delivery at destination, title passes on tender there.

In determining whether a taxable event occurred in South Dakota for sales tax purposes, the question is: where was the sale consummated by delivery? *Sturtz*, 373 N.W.2d at 134. *Compare In re Royal Plastics, Inc.'s Request for Refund of State and Municipal Sales and Use Tax*, 471 N.W.2d 582, 586 (S.D.1991) "Gross receipts from the sale of tangible personal property in South Dakota are not subject to sales tax, if the seller has an obligation under the sales agreement to deliver the tangible personal property out of state and the property will not be returned to this state." (citing ARSD 64:06:01:24). If the out-of-state retailer does not deliver the merchandise into the state, title passes to the buyer before the merchandise enters the state and the seller is not liable for sales tax. *See* SDCL 57A–2–401. Conversely, if the out-of-state retailer delivers the merchandise into the state, title passes when the retailer completes delivery in the state and the seller is liable for sales tax. SDCL 57A–2–401; *Sturtz*, 373 N.W.2d at 134. In other words, the determination of whether the sale is taxable for sales tax purposes is made when the sale is complete, or "consummated." *Cf. McLeod*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (Tennessee vendors not liable for Arkansas sales tax because "we are here concerned with sales made by Tennessee vendors that are consummated in Tennessee for the delivery of goods in Arkansas.").

As in *Sturtz*, sales by T & C to its South Dakota customers were consummated when T & C's trucks delivered the farm

---

**3.** As stated by Twitchell in *Imposition of the Duty to Collect State Use Taxes:*

A use tax is imposed upon the privilege of using, storing, and consuming personal property within the taxing state. States impose the tax on the purchaser, not the seller. The duty of collecting the tax is placed on the out-of-state seller. The use tax has two purposes, the first is to equalize in-state and out-of-state sellers. The compensatory use tax is levied on property used within the state if that property

would have been subject to sales tax if purchased within the state. The incentive to purchase out-of-state and avoid paying local sales tax is removed. The second purpose is to prevent a drain on the revenues available to the purchaser's state. The state receives the same revenue regardless of where the property is purchased—locally through the sales tax or out-of-state through the use tax. *Id.*

machinery to the customers in South Dakota. 373 N.W.2d at 134. Delivery in South Dakota constituted the taxable event which, under SDCL 10–45–2, SDCL 10–45–1(8), and SDCL 57A–2–401, triggered South Dakota sales tax. This is especially so when one considers *Schladweiler's* admonition that "the trial court cannot inquire into the legality or sufficiency of the evidence ... when considering a dismissal under SDCL 23A–8–2." *Schladweiler,* 436 N.W.2d at 854 (citation omitted).

■ Additionally we note that ARSD 64:06:01:25 provides:

*Interstate sales—Originating in other states.*

Sales tax liability is incurred when a sale at retail is made for use or consumption in this state. Sales tax must be paid even though the property sold is transported directly to the buyer from a point outside this state if the seller is engaged in the business of selling tangible personal property in this state and if possession of the property is transferred to a buyer residing or located in this state.

The purchase or contract may either precede or follow the interstate shipment. Sales tax applies to the transaction whether the shipment is made free on board (f.o.b.), point of origin or f.o.b. destination and no matter how the goods are transported.

All retailers doing business in this state and maintaining a business office in this state or maintaining agents or solicitors or doing business through independent order takers are subject to the retail sales tax on all sales of merchandise at retail when such sales are made for use and consumption in this state. Contracts or agreements purporting to require shipment of the property outside of South Dakota do not exempt sellers if the tax would otherwise apply. Sales tax applies regardless of whether the sales are made through solicitation, direct mail, or through catalogs.

Read together, the statutes and administrative rule clearly impose a sales tax liability on Dorhout. Administrative rules have the force of law and are presumed valid. *Hope Evangelical Lutheran Church v. Iowa Dept. of Revenue,* 463 N.W.2d 76, 84 (Iowa 1990) (citing *Richards v. Iowa Dept. of Revenue,* 360 N.W.2d 830 (Iowa 1985)). *See also, Duffy v. Mortenson,* 497 N.W.2d 437, 439 (S.D. 1993) (citations omitted) (administrative rules adopted by the State Board of Elections are binding and have the force of law). And, as noted below, Dorhout is presumed to know the law. *Hieb v. Opp,* 458 N.W.2d 797, 801 (S.D.1990) (citing *Johnson v. Graff,* 68 S.D. 562, 5 N.W.2d 33 (1942)). "This law applies to rules adopted by departments." *Id.* (citing SDCL 1–1–22, 1–1–23(8)).

■ Dorhout argues that if he is liable for any tax, it is a use tax under SDCL 10–46–20 and that the imposition of sales tax liability is a new point of law for which he cannot be held liable. SDCL 10–46–20 [4] imposes liability for the collection of use tax upon a retailer maintaining a place of business in this state unless the retailer is exempted under the provisions of SDCL 10–46–6 to 10–46–15. SDCL 10–46–6 [5] exempts from liability for use tax gross receipts from the sale in this state of tangible personal property or services which are subject to sales tax. Because Dorhout's sales were consummated by deliv-

---

4. SDCL 10–46–20 provides in part:

Any retailer maintaining a place of business in this state, and making sales of tangible personal property or services for storage, use or other consumption in this state, not exempted under the provisions of §§ 10–46–6 to 10–46–15, inclusive, shall, at the time of making such sale, whether within or without the state, collect the tax imposed by this chapter from the purchaser, and give to the purchaser a receipt therefor in the manner and form prescribed by the secretary of revenue, if the secretary of revenue, shall, by rule promulgated pursuant to chapter 1–26, require such receipt.

In 1991, SDCL 10–46–20 was amended, substituting "10–46–17.5" for "10–46–15" in the first sentence.

5. SDCL 10–46–6 provides:

The use in this state of tangible personal property or services, the gross receipts from the sale of which are to be included in the measure of the tax imposed by chapter 10–45, and any amendments made or which may hereafter be made thereto, is hereby specifically exempted from the tax imposed by this chapter.

ery in South Dakota and subject to sales tax, SDCL 10–46–20 does not apply.

■ Dorhout also argues that the law is ambiguous and the determination of whether he is liable for sales or use tax should not be addressed in a criminal proceeding. In support, Dorhout cites *United States v. Harris,* 942 F.2d 1125 (7th Cir.1991). *Harris* held in part that new points of tax law may not be the basis of a criminal conviction for willful failure to file tax returns or for willful tax evasion.

Initially, we note that *Harris* was decided by the United States Court of Appeals for the Seventh Circuit and therefore, we are not bound by the result. Additionally, *Harris* states that:

> If defendants in a tax case *could not have ascertained* the legal standards applicable to their conduct, criminal proceedings may not be used to define and punish an alleged failure to conform to those standards. This rule is based on the Constitution's requirement of due process and its prohibition on *ex post facto* laws; the government must provide reasonable notice of what conduct is subject to criminal punishment. The rule is also statutory in tax cases, because only "willful" violations are subject to criminal punishment. In the tax area, "willful" wrongdoing means the "voluntary, intentional violation of a known"—and therefore knowable—"legal duty."

*Id.* at 1131 (emphasis added) (citations omitted).

Dorhout could have ascertained whether he was liable for sales tax by reviewing the statutes and administrative rules. Testimony indicated that Dorhout thought he could avoid sales tax liability by not delivering the machinery or by not including delivery charges on the invoice. It also appears from a review of the Grand Jury transcript that Dorhout understood completely the conditions under which he was liable for sales tax. Grand Jury testimony indicates that in September, 1990, when Norman Uherka (Uherka) purchased a beanhead from T & C, he was told that if he came and picked up the beanhead himself, T & C would not charge him sales tax. But, if T & C delivered the beanhead, T & C would have to charge him sales tax. T & C delivered the beanhead and according to the retail order signed by Uherka, he paid sales tax in the amount of $66.75 and a delivery fee of $25.00. The sales tax return filed by Dorhout for the September–October, 1990 time period, however, reports zero sales subject to sales tax (or use tax) for that time period.

Clearly, the law was not ambiguous. Dorhout understood, at least as early as September, 1990, that he was liable for South Dakota sales tax if the sale was consummated in South Dakota. As to any sales prior to that time, we reiterate that "[i]ndividuals are presumed to know the law." *Hanson v. Brookings Hosp.,* 469 N.W.2d 826, 828 (S.D. 1991) (citations omitted). "We need no citation to reaffirm that ignorance of tax laws is not a valid defense for non-compliance." *Cotten v. Collector of Revenue,* 579 So.2d 499, 503 (La.Ct.App.1991). It appears from the present record that Dorhout violated a knowable and known legal duty, the payment of sales tax. *Harris,* 942 F.2d at 1131.

Because the indictment was not vulnerable under any of the grounds contained in SDCL 23A–8–2, the order dismissing the indictment is reversed and the case is remanded to the circuit court for further proceedings. *See generally Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 281, 97 S.Ct. 1076, 1080, 51 L.Ed.2d 326 (1977) ("[T]he Court consistently has indicated that 'interstate commerce may be made to pay its way,' and has moved toward a standard of permissibility of state taxation based upon its actual effect rather than its legal terminology.").

Reversed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Due to the paucity of facts in the majority opinion, to oblige the reader with the background of this case for a better understanding, the facts are supplemented by this writing.

- Rock Valley, Iowa is approximately 20 miles straight east of Fairview, South Dakota where Dorhout operates a farm implement dealership with sales of approximately $4 million per year.
- Complaints were filed with the South Dakota taxing officials, that Dorhout was making substantial sales to South Dakota residents and was not paying sales tax.
- An investigation conducted by the Department of Revenue of this state determined that Dorhout had sold farm machinery to South Dakota farmers, these South Dakota farmers being principally located along the South Dakota/Iowa border.
- Dorhout was informed by telephone and correspondence that he was liable for sales tax of farm equipment.
- Notwithstanding an attempt to educate Dorhout as to his tax responsibility, both by phone calls and correspondence of the South Dakota taxing authorities, Dorhout paid no sales tax.
- In fact, Dorhout testily told the taxation authorities of South Dakota that there was no way that South Dakota could trace the sales made into South Dakota.
- Dorhout, when confronted with evidence, admitted to a $30,000 sale in South Dakota.
- Having secured a sales tax license in this state, Dorhout began to file, in South Dakota, zero returns, reflecting that he had no sales in South Dakota. Further investigation took place. Dorhout admitted to having three customers in South Dakota.
- After further investigation, numerous other *delivered* sales to South Dakota were uncovered.
- Numerous exhibits were submitted to a grand jury; Exhibits 13, 14, 15, 16, 17, 18, 19, 20 *, and 21 all reflected sales to South Dakota residents, which were presented to the grand jury.
- Evidence produced reflected Dorhout's salesmen being in the state of South Dakota. Dorhout, himself, was personally observed in South Dakota with a red Town and Country Implement pickup truck.
- Dorhout extensively advertised his business in South Dakota through newspapers, radio, and television. As a result of a thorough investigation of Dorhout's business activities in South Dakota, documented by specific items sold such as a cultivator, disc mower, tractors, and planter, the taxing authorities saw fit to bring criminal charges against Dorhout.

When the trial court granted its Motion for Dismissal, the trial court had a grand jury transcript available, together with exhibits presented to the grand jury. Let there be no mistake that the trial court had an extensive factual background when the decision was made to dismiss this case. Essentially, the trial court's decision on January 21, 1993, held that Dorhout was (1) subject to use tax and not sales tax and (2) a new point of law was being lodged against Dorhout.

Under SDCL 10–45–1(6), there is certainly a jury question as to whether Dorhout is a retailer.

Under SDCL 10–45–1(8), there is a jury question as to whether Dorhout made any sales within the State of South Dakota.

Each criminal allegation of an avoidance of a sales tax must be tried below, in a jury case, if Dorhout demands a jury trial. One of the key questions therein will be: Did delivery take place in South Dakota? This is also known as "the point of possession" rule. *See In re Royal Plastics*, 471 N.W.2d 582, 585–86 (S.D.1991).

Reviewing *Sturtz v. Iowa Dept. of Revenue*, 373 N.W.2d 131, 132 (Iowa 1985), it appears that the definition of sale in Iowa is identical to the definition of sale in South Dakota. In *Sturtz*, 373 N.W.2d at 133–134, the Supreme Court of Iowa discussed sale and delivery. In Iowa, the place of delivery is the key in determining where the sale occurred and sales tax to be applied. This appears to be the same focus as this Court had in *Royal Plastics*.

Dorhout's contention that he was not subject to sales tax but was subject to use tax

---

* Exhibit 20, as an example, was an invoice for a $2,200 bean head sold to Norman Uherka of Wagner, South Dakota. The invoice also reflects a $25.00 charge for delivery.

provisions of SDCL ch. 10–46, appears to be, under the facts cited above, a mistake of law. *Permann v. Dept. of Labor*, 411 N.W.2d 113 (S.D.1987). However, I caution that Dorhout is still entitled to a fair trial, before a jury, to have all of the facts brought out. In South Dakota, the use tax was passed by our Legislature to complement the sales tax, not to displace it. *Northwestern Nat. Bank v. Gillis*, 82 S.D. 457, 148 N.W.2d 293, 298 (1967). Reading SDCL 10–46–6, it becomes quite obvious that if there exists a retail sale under Chapter 10–45, Chapter 10–46 does not apply. *See Gillis*, 148 N.W.2d at 298. *See also Pioneer Markets, Inc. v. Commissioner of Revenue*, 85 S.D. 24, 176 N.W.2d 477 (1970).

Explicitly, the trial court ruled that "Dorhout did not have fair warning that his conduct was criminal" and, also, that "Dorhout *could not have ascertained the legal standards applicable to his conduct.*" (Emphasis supplied mine.)

First of all, he is essentially arguing that the statutes are vague and uncertain and, therefore, a crime has not been statutorily defined with definiteness and certainty. Dorhout was charged with filing a false or fraudulent return in attempting to escape or evade sales tax under SDCL 10–45–48.1(1). Bear in mind that this defendant was explained the South Dakota sales tax law on several occasions. He is now trying to tell us that he has a legitimate defense because he is ignorant of the law. Reference is made to *State v. Dale*, 439 N.W.2d 98 (S.D.1989). Therein, at page 107, citing *State v. Martin*, 85 S.D. 587, 187 N.W.2d 576 (1971), we expressed:

> The court determined that it was incumbent upon the defendant, if he does not understand the law, to learn its content and meaning. The law charges every man with the knowledge of the *standards prescribed by the law*. (Emphasis supplied mine.)

Thus, I join in reversing the trial court's granting Dorhout's Motion to Dismiss for the rationale set forth in this writing.