**STATE of South Dakota, DEPART-MENT OF REVENUE, Plaintiff and Appellant,**

v.

**SANBORN TELEPHONE COOPERA-TIVE and Communication Enterprises, Inc., Defendants and Appellees.**

**No. 16710.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1990.

Decided April 25, 1990.

---

* SDCL 25–4–44 was amended subsequent to the    divorce decree.

Timothy T. Weber, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Jeffrey D. Larson of Larson & Nipe, Woonsocket, for defendants and appellees.

MILLER, Justice.

In this appeal we hold that a telephone cooperative and its wholly owned subsidiary are liable for use tax on telephone directories and cable television guides purchased from out-of-state printers, but that the cooperative is not liable for service tax on reimbursements received from its subsidiary for various routine business expenses.

## FACTS

The appellees are two entities, namely: Sanborn Telephone Cooperative (Sanborn), and Communication Enterprises Inc. (CEI). Sanborn provides telecommunication services to areas in south central South Dakota. CEI, a wholly owned subsidiary of Sanborn, provides cable television service to four communities and sells residential and business telephone systems, VCRs and other telecommunication equipment. CEI is operated out of the same facility as Sanborn with certain expenses and overhead being shared in a manner described later herein.

Sanborn provided its customers with telephone directories. CEI furnished its customers with cable TV guides. Both entities purchased these publications from out-of-state printers and paid no sales tax thereon.

In July, 1987, after an audit by the Department of Revenue (Department), additional sales and use taxes were assessed against both entities, with certificates of assessments being issued by the Department Secretary regarding the out-of-state purchase of the directories and guides and their subsequent use in South Dakota.

An administrative hearing was held before Department at the request of Sanborn and CEI. The Secretary ultimately affirmed the assessment. Sanborn and CEI appealed Department's decision to the circuit court which reversed the holding. Department appeals.

## DECISION

### ISSUE I

ARE A TELEPHONE COOPERATIVE AND A CABLE TELEVISION COMPANY LIABLE FOR USE TAX ON TELEPHONE DIRECTORIES AND CABLE TELEVISION GUIDES PURCHASED WITHOUT TAX FROM OUT–OF–STATE VENDORS FOR USE AND DISTRIBUTION IN SOUTH DAKOTA?

"Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by [the] Department [of Revenue] or the circuit court." *Midcontinent Broadcasting v. Revenue Dept.*, 424 N.W.2d 153, 154 (S.D.1988).

Our use tax is provided in SDCL 10–46–2 and imposes a tax "on the privilege of the use, storage, and consumption in this state of tangible personal property purchased ... for use in this state[.]"

As we said in *Sioux Falls Newspapers v. Secretary of Revenue*, 423 N.W.2d 806, 810 n. 3 (S.D.1988), the use tax "is levied on property used within the state if that property would have been subject to sales tax if purchased within the state." Further, "[u]se tax compliments and supplements the sales tax by imposing upon those subject to it a tax burden equal to the sales tax in order that property sold or utilized in this state would be taxable once for the support of state government." *Sioux Falls Newspapers, supra* at 810 n. 3; *National Bank of Sioux Falls v. Gillis*, 82 S.D. 457, 467, 148 N.W.2d 293, 298 (1967). Use tax generally applies to retail transactions and not to transactions where items are purchased for resale. *Sioux Falls Newspapers, supra.*

It is undisputed that Sanborn and CEI purchased the telephone directories and cable television guides from out-of-state printers and paid no sales tax to the printers.* They are furnished to their customers with no specific charge. Sanborn and CEI claim that because use tax may not be

imposed on the sale of property sold in the regular course of business, i.e., resale, the directories and guides are exempt from taxation. Their claimed exemption status is based on the interpretation of the term "use," which is defined under SDCL 10–46–1(12) to be "the exercise of right or power over tangible personal property incidental to the ownership of that property, *except that it does not include the sale of that property in the regular course of business.*" (Emphasis added.)

■ In order for Sanborn and CEI to prevail, they must prove (1) that they actually made a sale of the directories and guides, and (2) that the sale occurred in the regular course of their businesses. When a party claims an exemption under a statute, we construe the statute strictly against the party claiming the exemption. *Sioux Falls Newspapers, supra; Matter of Townley*, 417 N.W.2d 398 (S.D.1987). Doubts are resolved in favor of taxation. *Id.*

■ Sanborn and CEI argue that the directories and guides are an "integral part" of their product and that their cost is calculated into the service rates, thus evidencing a resale. Department argues that the directories and guides are not purchased by Sanborn and CEI for sale to the customers because there is no subsequent resale.

In support of Department's claim, we note that inside the telephone directory under the title "General Rules and Regulations," it specifically states: *"Directories,* equipment, instruments, and lines furnished by the Telephone Company, on the premises of a subscriber, *are the property of the Telephone Company"* and "One directory for each location and/or each instrument leased through the Sanborn Telephone Co-op Inc. is furnished *without charge."* (Emphasis added.) This certainly negates any claim of resale of the directories. The only evidence from Sanborn contradicting this is testimony which

---

* It would appear, and does not seem to be disputed, that if Sanborn and CEI had purchased the directories and guides in South Dakota they

would have been subject to sales tax. SDCL 10–45–2.

claimed that there was a charge assessed for the directories as part of the local service rate. It is important to note, however, that Sanborn is the entity which orders and pays for the directories and would obviously control what is printed therein.

We interpret the specific language contained in the directories to mean exactly what it says, "[o]ne directory ... is furnished without charge" and that they are "the property of the Telephone Company."

Additionally, we find that there is insufficient evidence to establish CEI's resale of the guides. They are distributed free of charge to subscribers or the general public could pick them up at CEI's office.

Both companies assert that these books are an integral part of the service they provide, thereby lending support to their resale argument. First, we note they are primarily in the telecommunication business, they are not book sellers. Further, although the publications are important to their cost of doing business, so are other goods and services purchased by them. They have not, nor could they assert that they are exempt from sales or use tax for their purchase of equipment, lines, etc.

We also recognize that Sanborn and CEI are the admitted purchasers of the guides and directories, making them the unquestionable owners thereof. There simply is no subsequent sale. The subsequent distribution of these materials to the consumer in the manner or any manner chosen by them constitutes "the exercise of right or power" over these items of tangible personal property incidental to their ownership thereof and consequently falls under the definition of "use" within SDCL 10–46–1(12).

We therefore conclude that the guides and directories are subject to the use tax.

## ISSUE II

DO THE REIMBURSEMENTS FROM CEI TO SANBORN CONSTITUTE GROSS RECEIPTS SUBJECT TO TAX?

Department contends that Sanborn provides a service to CEI upon which the gross receipts may be taxed under SDCL 10–45–4 and –5. The resolution of this issue revolves around the application of SDCL 10–45–4 and other various tax statutes.

SDCL 10–45–4 states:

There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the *gross receipts* of any person from the engaging or continuing in the practice of any *business* in which a service is rendered. Any *service* as defined by § 10–45–4.1 shall be taxable, *unless the service is specifically exempt from the provisions of this chapter.* (Emphasis added.)

SDCL 10–45–1(3) defines "gross receipts" as: "... money, [or credits] ... in consideration of sales at retail[.]"

SDCL 10–45–4.1 defines "service" as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property."

SDCL 10–45–1(7) defines "sale at retail" as "the sale of either tangible personal property or services, or both, to the consumer or user thereof, or to any person for any purpose other than for resale[.]"

SDCL 10–45–1(8) defines "sale" as "any transfer, exchange or barter ... in any manner or by any means whatsoever, for a consideration."

It is clear from the evidence that Sanborn and CEI share building space and some employees, including their payroll and benefit expenses. Certain other overhead is shared by the two companies. CEI pays its share of these costs by reimbursing Sanborn. Sanborn makes no profit from these reimbursements.

Under our statutory scheme, we must determine if there was then a "sale" of "services." Department claims that this case is disposed of by our decision in *Townley, supra.*

In *Townley,* the taxpayer was in the business of renting cars and as a consequence of doing business, would charge for

the gas used. Additionally he sold auto insurance on cars rented. In that case, we noted and held that although the taxpayer was in the *business* of renting cars and not selling gasoline and insurance, the intent of the legislature is to impose a tax upon the "gross receipts" of any business. Because this money was received by Townley in relation to his rental business, the gross receipts were subject to tax.

This case is distinguished from *Townley.* Here the consideration Sanborn receives for the service provided to CEI is totally unrelated to the services it provides as a telecommunication company and the gross receipts received therefrom. Rather than selling these services to the public, as was done in *Townley,* Sanborn, simply for accounting purposes, makes a charge against its own subsidiary for a proportionate share of expenses. In reality, it is a bookkeeping transfer. We conclude that such activity was not contemplated by our legislature in the creation of the sales and service tax.

We therefore reverse on issue I and affirm on issue II.

All the Justices concur.