#23730-aff in pt & rev in pt-JKK

**2006 SD 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF CHOICE
HOTELS INTERNATIONAL, INC.,
LICENSE NO.
73-001-521209798E-ST-001,                    Appellant,

    v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE AND REGULATION,          Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX A. GORS
Judge

* * * *

JOHN L. BROWN of
Riter, Rogers, Wattier & Brown
Sioux Falls, South Dakota          Attorneys for appellant.

HARVEY M. CROW, JR.
SD Department of Revenue
and Regulation
Rapid City, South Dakota          Attorney for appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2006

OPINION FILED **03/15/06**

#23730

KONENKAMP, Justice

[¶1.] South Dakota law exempts travel agent services from sales tax. Nonetheless, the Department of Revenue, reasoning that an entity acting as a pass through for tax-exempt funds was not itself specifically exempt from paying the tax, issued a certificate of assessment against a hotel franchisor for sales tax on travel agent commissions it collects from its franchisees and pays to travel agents. The Department also assessed the franchisor for unpaid sales tax on fees collected for its customer incentive program. As to the travel agent fees, we hold that no sales tax applies because the franchisor acts strictly as a pass through in collecting and distributing tax exempt funds. With respect to the incentive program fees, however, we conclude that they are collected as part of a service and therefore are subject to sales tax. We affirm in part and reverse in part.

**Background**

[¶2.] Choice Hotels International, Inc. is the franchisor of eight hotel brands: Clarion, Quality, Comfort, Comfort Suites, Sleep Inn, EconoLodge, and Rodeway. After conducting an audit, the South Dakota Department of Revenue and Regulation issued a certificate of assessment against Choice for sales tax and interest totaling $66,497.80. Two of Choice's programs were scrutinized in the audit resulting in the sales tax assessment: the Travel Agent Centralized Commission Program and the Choice Privileges Program. Choice disputed the

taxability of both programs and contested the assessment, but it was unsuccessful in its administrative and circuit court appeals.[1]

[¶3.]        Designed to act as a pass through for travel agent commissions, the Travel Agent Centralized Commission Program works within Choice's reservation system.  Choice makes this a mandatory program in which all hotels must participate.  It was developed by Choice because "[t]ravel agents account for up to 40% of all reservations," and there was a "potential for even higher reservation volume from travel agents[.]"  After a reservation is booked with a Choice franchisee hotel through a travel agent, all the information is sent to a third party database, and then Choice sends an invoice to each franchisee.

[¶4.]        Itemized in each invoice is a forty-eight cent processing fee Choice charges for each transaction and the commission owed by the franchisee to the travel agent for each reservation.  A reminder at the bottom of Choice's invoice explains that "Commissions are NOT PAID to the Travel Agency until [the franchisee's] payment has been received."  Failure to pay the amount due on the invoice (the processing fee and commission) constitutes a breach of the franchise agreement.

[¶5.]        After the invoice is received, the franchisee is required to verify the information and make any necessary changes.  If a guest does not actually use the reservation, for example, the franchisee would deduct the commission charged.

---

1.        Choice paid the disputed amount of tax to stop interest from accruing, subject to a refund in the event its appeal was successful.

Once the invoice information is verified by the franchisee, it sends payment to a separate account owned by Choice.[2] From that account, all the commissions collected are sent to the travel agents. The forty-eight cent processing fees are transferred to Choice's operating account. Accordingly, Choice argues that the travel agent commissions it processes are exempt under South Dakota statutes, and transferring these commissions from the franchisees to the travel agents should not make them taxable.

[¶6.]     Choice also challenges the taxability of the monies collected through its Choice Privileges Program. This program was developed by Choice as an incentive plan for member guests to stay at franchisee hotels. The hotels are not required to participate in or offer the program to guests. However, if a franchisee elects to participate, it is required to pay Choice "$2.50 for each night a member of the Choice Privileges Program stays at that hotel."

[¶7.]     According to Choice, this $2.50 is used to reimburse participating franchisees when a member of the program stays at the franchisee for free. A member would stay for free after spending ten nights at qualifying franchisees. And because the guest is not required to spend the free eleventh night at the same franchisee where the qualifying nights were accumulated, Choice argues that the $2.50 is collected only to offset franchisee loss. Therefore, Choice asserts that the service should not be considered taxable, as Choice does not engage in an activity for a fee, retainer, commission, or other monetary charge.

---

2.     The account is administered by a third party and is entitled *Choice Hotels International Travel Program*.

[¶8.] These arguments were unsuccessful in Choice's administrative and circuit court appeals. It now asks us to review the following questions: (1) "Whether travel agent commissions, otherwise exempt from sales tax under South Dakota statutes, are taxable receipts to a franchisor, which collects such commissions and disburses the commissions to the travel agent?" (2) "Whether the collection of monies from individual franchisees in order to reimburse a franchisee for a qualifying stay under a rewards program constitutes gross taxable receipts?"

## Standard of Review

[¶9.] In administrative appeals, our standard of review is governed by SDCL 1-26-36. "We give deference to the agency on factual matters, applying the clearly erroneous standard of review." Watertown Coop. Elevator Ass'n v. S.D. Dept. of Rev., 2001 SD 56, ¶10, 627 NW2d 167, 171 (citation omitted). Questions of law, such as the question whether a statute imposes a tax under a given factual situation, are reviewed de novo. *Id.* (quoting S.D. Dept. of Rev. v. Sanborn Tel. Coop., 455 NW2d 223, 225 (SD 1990) (additional citation omitted)). "Statutes allowing tax exemptions are exactingly and narrowly construed in favor of the taxing entity." *Id.* (citing *Matter of* Quality Service Railcar Repair Corp., 437 NW2d 209, 211 (SD 1989)).

## Analysis and Decision

### 1. Travel Agent Centralized Commission Program

[¶10.] Choice does not dispute that its forty-eight cent processing fee is a taxable gross receipt. However, it argues that transferring payment of the exempt travel agent commissions on behalf of the franchisees should not make the

commissions taxable to Choice. Franchisees can pay the travel agent commissions directly to the travel agents. Choice merely acts as a pass through.

[¶11.] The Department, on the other hand, asserts that Choice's circumstances do not fit the usual exemption for a travel agent commission. The exemption would apply, according to the Department, if the franchisee hotels paid the travel agent commissions to the travel agents directly. Here, however, the franchisees are making payment for travel agent commissions to Choice, which is not a travel agency.[3] Accordingly, the Department contends that Choice has failed to prove that it is entitled to the exemption under SDCL 10-45-12.1.

[¶12.] A tax is imposed, under SDCL 10-45-4, "upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered." Further, any service is subject to sales tax unless specifically exempted. *Id.* A service is defined in SDCL 10-45-4.1 as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property." In SDCL 10-45-12.1, certain services are delineated as exempt from sales tax under SDCL ch. 10-45.

[¶13.] It is undisputed that travel agent services are exempt from sales tax under SDCL 10-45-12.1. Yet, for Choice to be entitled to an exemption on the travel

---

3. The exempt services enumerated in SDCL 10-45-12.1 are from the Standard Industrial Classification Manual. Travel agent services are grouped under "arrangement of passenger transportation (group no. 472)." The Department argues that Choice must be primarily engaged in furnishing travel information and arranging lodging for travelers to be entitled to the exemption.

agent commissions it processes, it has the burden to prove such exemption. *See Matter of* Pam Oil, Inc., 459 NW2d 251, 255 (SD 1990). According to the Department, Choice was required to identify a *specific statute* that exempts a "pass-through" service.

[¶14.] "This [C]ourt has repeatedly held that the rule that laws exempting property from taxation should be strictly construed in favor of the taxing power does not call for strained construction, but must always be reasonable and will not be applied to defeat the expressed intent of the Legislature." *In the Matter of* Veith, 261 NW2d 424, 426 (SD 1978) (citing State v. Erickson, 44 SD 63, 182 NW 315 (1921); State v. Knudtson, 65 SD 547, 276 NW 150 (1937)). To interpret the exemption as narrowly as the Department has done in this case contravenes the legislative intent that travel agent commissions be exempt from sales tax.

[¶15.] The commissions would be exempt if paid by the franchisees to the travel agents. Here, Choice sends invoices to the franchisees indicating what amounts the *franchisees* owe the travel agents for commissions earned on reservations made at those franchisee hotels. The franchisees then have the option of paying the travel agents directly or submitting payment for the commissions in one payment through the Travel Agent Centralized Commission Program account owned by Choice. If franchisees elect to make payment through the agent commission account, Choice does not retain any portion of the commissions; all commissions are paid to the travel agents.[4] Therefore, we conclude that it is

---

4.  The Department does not assert that Choice retains any portion of this ten percent commission.

unreasonable to hold that solely because the commissions are collected by the franchisor from the franchisees and then paid to the travel agents they are no longer exempt from tax. *See Veith,* 261 NW2d at 426. Choice met its burden to show that the travel agent commissions were exempt from tax under SDCL 10-45-12.1.

### 2. Choice Privileges Program

[¶16.] According to Choice, all monies collected through the Choice Privileges Program are awarded out of the program. As a result, Choice maintains that there is no taxable service because it does not retain a fee for this transaction. "As required by this statute, we use the predominant activity test in deciding if the services were subject to sales tax." *Watertown Coop Elev. Ass'n*, 2001 SD 56, ¶12, 627 NW2d at 172. From examining the transaction, it is evident that Choice offers the Choice Privileges Program to the franchisees in return for a fee. As we said in *Watertown Coop*, we focus on the transaction. *See id.*

[¶17.] This program was created to entice guests to stay at franchisee hotels. One guest benefit is that after staying ten nights, the eleventh night is free. When a guest receives a free night's stay, the franchisee suffers a loss. In return for the franchisee's participation in the program, Choice promises to reimburse the franchisee for the cost of the guest's room. All that is required is payment of $2.50 each time a Choice Privileges member stays at that franchisee's hotel. This constitutes an activity "engaged in for other persons for a fee. . . ." *See* SDCL 10-45-4.1. Thus it is a taxable service under SDCL 10-45-4.

[¶18.] Affirmed in part and reversed in part.

[¶19.]    GILBERTSON, Chief Justice, and SABERS, ZINTER, and

MEIERHENRY, Justices, concur.