#25546-a-SLZ
**2010 S.D. 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TRM ATM CORPORATION
LICENSE NOS. -
73-001-931263309E-ET001
73-001-931263309e-ST-001,                              Plaintiff and Appellant,

v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE AND REGULATION,                         Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA
* * * *

HONORABLE MARK BARNETT
Judge

* * * *

HAVEN L. STUCK of
Lynn, Jackson, Shultz & Lebrun, P.C.
Rapid City, South Dakota

J. SCOTT MORRIS of
J. Scott Morris, P.C.                              Attorneys for plaintiff
Austin, Texas                                      and appellant.

JOHN T. RICHTER of
South Dakota Department of Revenue
and Regulation                                     Attorney for defendant
Pierre, South Dakota                               and appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 4, 2010

OPINION FILED **12/08/10**

#25546

ZINTER, Justice

[¶1.]          TRM ATM Corporation (TRM) appeals a sales tax assessment on

services it rendered to intermediaries involved in providing automatic teller

machine (ATM) banking.  The case requires us to consider whether concededly

taxable services are subject to sales tax that must be paid by TRM, the provider of

the services; or, whether the services are subject to use tax that must be paid by the

intermediaries that use TRM's services.  If the services are subject to sales tax, we

must also determine whether TRM is obligated to pay the tax on receipts that it

claims were received only "temporarily" until they were "passed-through" to third

parties.  We conclude that the services are subject to sales tax.  We also conclude

that TRM must pay the tax on all of its gross receipts.

*Facts and Procedural History*

[¶2.]          This case was submitted on stipulated facts.  TRM is an Oregon

corporation that owns, operates, sells, leases, and services ATMs in South Dakota.

The South Dakota Department of Revenue and Regulation assessed sales tax on

transaction processing and surcharge fees that TRM received from sponsor banks

and core-data companies.[1]  Sponsor banks and core-data companies are

intermediaries in an ATM transaction.  They contract with an ATM cardholder's

depository bank to make remote ATM services available for the cardholder.  In

order to provide the ATMs at remote locations, the sponsor banks and core-data

---

1.          It appears that the processing and surcharge fees represent a small portion of
            the fees a cardholder pays a depository bank in an ATM transaction.

#25546

companies contract with TRM to provide and service the ATMs.  The sponsor banks

then pay TRM for its services.[2]  The parties stipulated that:

- Pueblo Bank and Trust and First Financial Bank ("sponsor banks"), and core-data companies Star Processing, Inc., . . . and Money Access Service . . . ("core-data companies"), *contract with TRM to provide and service ATMs.*
- *The transactions* from which TRM is paid its fees are between TRM, the sponsor bank, and the core-data companies.
- TRM receives its contractual share of the surcharge and transactional fees through either Pueblo Bank and Trust or First Financial Bank for every transaction.  *The transaction processing fees and surcharge fees paid here are taxable services to someone; they are not exempt services.*

(Emphasis added.)

[¶3.]          The Department adopted a hearing examiner's decision concluding

that the sales tax assessment was correct because:  "TRM clearly provides a service

---

2.     TRM's contract for services requires that sponsor banks pay transaction processing fees as follows:

> [Sponsor bank] agrees to pay [TRM] for each transaction made on the ATM.  A "transaction" shall mean any cash withdrawal made from a cardholder's account.  [Sponsor bank] shall pay [TRM] ten cents ($.10) [this amount may vary] per transaction. Payments for transactions will be disbursed monthly by [sponsor bank] to [TRM.]

TRM's contract also requires that sponsor banks pay transaction surcharges as follows:

> In the event [TRM] is legally permitted and chooses to impose a surcharge upon each transaction, [TRM] will receive, from said transaction proceeds, one hundred percent (100%) of the gross surcharge income collected per month.  [Sponsor bank] agrees that surcharge revenue shall be remitted to [TRM] at the time transaction fees . . . are paid.

and it does so for the transaction fees and surcharge fees. TRM provides its services to the sponsor banks [and the] core data companies." The circuit court affirmed. "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court." *S.D. Dep't. of Revenue v. Sanborn Tel. Coop.,* 455 N.W.2d 223, 225 (S.D. 1990).

*Decision*

[¶4.]    A sales tax is imposed on the gross receipts of businesses engaged in rendering services.

> There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered. Any service as defined by § 10-45-4.1 shall be taxable, unless the service is specifically exempt from the provisions of this chapter.

SDCL 10-45-4. Taxable services include "all activities engaged in for other persons for a fee . . . which activities involve predominantly the performance of a service[.]" SDCL 10-45-4.1.

[¶5.]    A number of entities provide services in a chain of transactions necessary for ATM banking. TRM concedes that its services are taxable. But TRM argues that it is not the entity in the chain that is responsible to pay tax on those services. TRM contends that instead of it paying sales tax, the sponsor banks and core-data companies should be assessed use tax for their use of TRM's services. *See* SDCL 10-46-2.1 ("For the privilege of using services in South Dakota . . ., there is imposed on the person using the service an excise tax equal to four percent of the value of the services at the time they are rendered.").

#25546

[¶6.]    TRM points out that it has no contractual relationship with the cardholder or the cardholder's depository bank, and TRM provides no service directly to the ATM cardholder. TRM only provides services to the core-data companies and sponsor banks that contract with the depository banks that ultimately provide their cardholders with access to ATMs. TRM also points out that the core-data companies calculate and disburse the fees earned by each intermediary in an ATM transaction. The core-data companies then charge the cardholder's bank account. Based on these facts, TRM argues that its transactions are not subject to sales tax under the predominant activity test applied in *Watertown Coop. Elev. Assoc. v. S.D. Dep't. of Revenue*, 2001 S.D. 56, 627 N.W.2d 167, and *Sioux Falls Shopping News, Inc. v. Dep't. of Revenue and Regulation*, 2008 S.D. 34, 749 N.W.2d 522.[3]

[¶7.]    *Watertown Coop.* and *Shopping News* involved the imposition of use tax on intermediary transactions not involving an ultimate consumer. In both cases we applied (expressly or implicitly) the predominant activity test, and we emphasized that the focus should be on the transaction. *See Shopping News*, 2008 S.D. 34, ¶ 23, 749 N.W.2d at 527; *Watertown Coop.*, 2001 S.D. 56, ¶ 12, 627 N.W.2d at 172. TRM argues that its services are not the predominant activity in an ATM transaction. TRM further argues that because use tax was imposed on intermediaries in *Watertown Coop.* and *Shopping News*, the Department must

_____

3.    The predominant activity test was not specifically mentioned in *Shopping News*. Instead, we cited *Coop. Agronomy Serv. v. S.D. Dep't. of Revenue*, 2003 S.D. 104, ¶ 8, 668 N.W.2d 718, 721, which applies the same test.

-4-

collect use tax from the sponsor banks and core-data companies for their use of TRM's services rather than collecting sales tax from TRM for its sale of those services. We conclude that the Department is not so constrained.

[¶8.] Contrary to TRM's argument, *Watertown Coop.* did not utilize the predominant activity test to determine which tax applied. The issue was whether crop production specialist services provided in connection with the sale of exempt agronomy products were exempt from all taxation because the services were a part of the exempt product sold. *Watertown Coop.*, 2001 S.D. 56, ¶ 11, 627 N.W.2d at 171-72. Similarly, *Shopping News* did not utilize the predominant activity test "to determine whether use tax or sales tax applied to the transaction." Appellant's Br. 7. The type of applicable tax – sales or use – was not at issue. The issue was "[w]hether the distribution and delivery services [used by an advertiser were] exempt from the use tax." *Shopping News,* 2008 S.D. 34, ¶ 17, 749 N.W.2d at 525.

[¶9.] Furthermore, the fact that use tax was ultimately imposed on intermediaries in both cases was not important to this Court's reasoning. In fact, we expressly noted that "the focus belongs on the transaction, not the character of the participants." *Id.* ¶ 23, 749 N.W.2d at 527. Therefore, *Shopping News* and *Watertown Coop.* do not stand for the proposition that intermediary transactions not involving a final consumer are only subject to use tax. Both cases merely stand for the proposition that in analyzing the taxability of a service, the dispositive inquiry focuses on the predominant activity in the transaction between those parties who exchange consideration for the service. In this case, TRM's provision of

ATM services is the predominant activity in its transactions with the sponsor banks and core-data companies.

[¶10.]    TRM's attempt to shift all tax liability to the user of its services fails to recognize that sales tax is imposed "upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is *rendered*." SDCL 10-45-4 (emphasis added). Those services include "all activities engaged in *for other* persons[.]" SDCL 10-45-4.1 (emphasis added). And, "gross receipts means the total amount or consideration, . . . for which services are *sold* . . . whether *received* in money or otherwise[.]" SDCL 10-45-1.14 (emphasis added). On the other hand, use tax "is imposed on the person *using* the service[.]" SDCL 10-46-2.1 (emphasis added). "A use tax is a tax on the enjoyment of that which was purchased." *State v. Dorhout*, 513 N.W.2d 390, 392 (S.D. 1994). Therefore, use tax applies if an entity has paid another entity for the use of services. But sales tax applies if an entity has received payment from another entity for services rendered.

[¶11.]    In this case, TRM "rendered" ATM services "for other persons," and TRM "receive[d]" consideration for those services. *See* SDCL §§ 10-45-4, -4.1,-1.14. Because TRM was the party rendering services to others for money, its services fall within the definition of "service" under the sales tax statutes, SDCL §§ 10-45-4 and 10-45-4.1.

[¶12.]    TRM's argument also fails to recognize that a transaction may be subject to either sales or use taxation. "In South Dakota, the use tax was passed by our [L]egislature to complement the sales tax, not to displace it." *Dorhout*, 513 N.W.2d at 397 (Henderson, J., specially concurring). Moreover, the Legislature has

provided an exemption from use tax if the service is subject to the sales tax. *See* SDCL 10-46-6. Therefore, we see no statutory impediment to the Department's decision to first focus on the entity providing a service rather than the entity using the service. We agree with the hearing examiner, the Department, and the circuit court that TRM's services are subject to sales tax under SDCL 10-45-4.

[¶13.] TRM, however, contends that it received "some" of the fees only "temporarily" until they were "passed through" to third-party merchants. TRM points out that it originally owned and operated over thirty ATMs in South Dakota. Prior to the audit period, TRM sold all but three ATMs to third-party merchants on whose premises the ATMs were located. After those sales, TRM became contractually obligated to pay the third-party merchants some of the fees. But "[i]n every instance where TRM sold an ATM to a third-party merchant, TRM maintained the contract with the sponsor bank or core-data company. TRM continued to collect its contractual transaction fees and surcharges." Stipulated Fact # 18. Moreover, the amount paid[4] to the third-party merchants was based on some contractual obligation, the specifics of which TRM has not disclosed on appeal.

[¶14.] Nevertheless, TRM insists that it acted "as a mere pass through," and therefore, the money it was obligated to pay the third-party merchants was not TRM's "gross receipts." But under the facts of this case, whether TRM had contractual obligations to the third-party merchants is irrelevant. SDCL 10-45-4 imposes the tax "upon gross receipts." And gross receipts include the "total amount

---

4. During the audit period, TRM kept $243,813 in fees: $11,081 in 2004; $87,767 in 2005; $81,229 in 2006; and $54,736 in 2007.

or consideration . . . received . . . without any deduction" for any "cost" of the service or "any other expense" of the seller except for statutory deductions and exemptions that are not claimed here.[5]  *See* SDCL 10-45-1.14(1), (2).

[¶15.]    Because TRM makes no claim to a statutory deduction or exemption for its costs associated with the third-party merchants, TRM argues that it "*performs no services* that would entitle it to receive and keep these fees; they are received and passed on *without consideration received.*  These amounts are not . . . '[g]ross [r]eceipts.'"  (Emphasis added.)  But the record does not include the contracts with the third-party merchants reflecting the extent to which TRM performed services for consideration.  This is important because, as indicated in the stipulated facts, even when TRM sold an ATM to a third-party merchant, TRM contracted with the core-data companies and sponsor banks "to continue[ ] to collect its contractual transactional fees and surcharges."  And notwithstanding the purported "pass through" of some of the fees, TRM acknowledges that it performed a contractual service by disbursing the fees to the third-party merchants.  As the hearing examiner and circuit court observed, that service, "[a]t a minimum, [included TRM's provision of] some accounting or bookkeeping service and handling service for those [third-party] merchants."  We conclude that this record does not support TRM's claim that it received no gross receipts in those cases where third-party merchants purchased ATMs.

---

5.    For a list of the extensive statutory deductions and exemptions, *see* SDCL ch. 10-45.

[¶16.]     TRM finally argues that the money it paid third-party merchants is not taxable because this was a pass-through arrangement that is "structurally" similar to the arrangement approved in *Choice Hotels Int'l, Inc. v. S.D. Dep't. of Revenue and Regulation,* 2006 S.D. 25, 711 N.W.2d 926. In *Choice Hotels*, a franchisor mandated that its franchisee hotels participate in a commission program. When a reservation was booked through a travel agent, the franchisor collected the travel agent's commission from the franchisee. The Department claimed the franchisor's collection of the travel agent's commissions was subject to sales tax. The franchisor claimed a statutory travel agent commission exemption, arguing that it was merely transferring the exempt commission from the franchisee to the travel agent. The Department ruled that the tax exemption applied only if the franchisee paid the travel agent commission directly to the travel agents. This Court reversed, noting that "[t]o interpret the exemption [that narrowly] contravenes the legislative intent that travel agent commissions be exempt from sales tax." *Id.* ¶ 14, 711 N.W.2d at 929. We concluded "it [was] unreasonable to hold that solely because the commissions [were] collected by the franchisor from the franchisees and then paid to the travel agents they [were] no longer *exempt* from tax." *Id.* ¶ 15, 711 N.W.2d at 930 (emphasis added). But in this case TRM claims no statutory exemption. And, as previously noted, the tax is imposed on all gross receipts except for statutory exemptions and deductions. Therefore, *Choice Hotels* is substantively inapplicable.

[¶17.]     TRM's services provided to sponsor banks and core-data companies are subject to sales taxation under SDCL 10-45-4. Because TRM has identified no

statutory deduction or exemption for the fees it collected for those services, the assessment is affirmed.

[¶18.]    GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.