*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 29, 2021

Plaintiff-Appellee,

v

No. 350756
Wayne Circuit Court
LC No. 18-006144-01-FC

CHRISTIAN ANDREW GARDNER,

Defendant-Appellant.

Before: LETICA, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, felonious assault, MCL 750.82, resisting or obstructing a police officer, MCL 750.81d, and domestic violence, MCL 750.81(2). We vacate defendant's felonious assault conviction, but otherwise affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the July 12, 2018 stabbing of Cynthia Bally, who previously had a dating relationship with defendant. Defendant, who had been living in an apartment in Plymouth with Bally, left to move to Florida around May 14, 2018. Shortly thereafter, Bally moved into a condo located in Northville Township.

According to Bally, she had not had any contact with defendant after he left for Florida. Defendant provided evidence to the contrary, showing that the two of them had communicated frequently in the time leading up to the stabbing. In fact, defendant provided e-mail exchanges, which included a request from Bally to defendant to return to Michigan. Defendant also claimed that he had been living in the condo with Bally upon his return. Bally's claim of having no contact with defendant also was contradicted by her statement in her call to the police that defendant had spent the previous night there.

Bally testified that on July 12, 2018, defendant suddenly appeared at her condo, cornered her on her second-floor balcony, and, without saying a word, stabbed her multiple times when she called the police. Defendant testified that on the night of the stabbing, Bally had gotten upset with

-1-

him for standing too close behind her while she was in the kitchen. According to defendant, Bally took a kitchen knife out to the balcony with her, and when he joined her, she called the police. Defendant testified that when Bally made untruthful statements during the call, he reached for the phone, and at that point, Bally stabbed him in the thigh with the knife. He claimed that the two of them then tussled over the knife and that Bally must have gotten stabbed during the tussle.

After the stabbing, Bally walked out of the condo and met up with a police officer. The officer saw defendant on the balcony and ordered him to show his hands, but defendant refused and instead replied, "I have a gun," and walked back inside the condo. While holed up inside the condo, defendant recognized that the police wanted him to come out, but he initially refused, only coming out sometime later after talking with a police negotiator. Although defendant previously claimed that he had a gun, no firearm or ammunition was ever found or seized.

Bally suffered numerous wounds: one stab wound on the left upper arm, four stab wounds to her abdomen, and an injury to her right ring finger. Bally was transported to a hospital, where she underwent surgery and stayed five days.

Bally testified at the preliminary examination, but died before trial commenced.[1] As a result, the trial court admitted Bally's preliminary examination testimony into evidence at the bench trial. The trial court found that, although Bally had lied about the circumstances surrounding defendant's presence in the condo and the amount of interaction between the two leading up to the incident, her testimony of how the stabbing occurred was more credible than defendant's version. Consequently, the trial court convicted defendant as charged of AWIM, felonious assault, resisting or obstructing a police officer, and domestic violence.

## II. INCONSISTENT VERDICTS

Defendant argues that the trial court erred by entering inconsistent verdicts of AWIM and felonious assault. We disagree.

Because defendant did not argue below that guilty verdicts for both AWIM and felonious assault were inconsistent or mutually exclusive, or otherwise raise this issue in the trial court, it is unpreserved. This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Additionally, while juries are allowed to render inconsistent verdicts, the same cannot be said for trial judges sitting as triers of fact. *People v Walker*, 461 Mich 908 (1999); *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980). An inconsistent verdict is one that cannot be "rationally reconciled" with the trial court's underlying factual findings. See *People v Ellis*, 468 Mich 25, 27; 658 NW2d 142 (2003).

Defendant asserts that the *mens rea* elements for AWIM and felonious assault are mutually exclusive, which makes convictions of both crimes for the same act inherently inconsistent. The elements of AWIM are " '(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder.' " *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d

---

[1] Bally's death was not directly attributed to the stabbing.

120 (2010) (citation omitted). In order to be convicted of felonious assault, the prosecution must prove "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Contrarily, the felonious assault statute, MCL 750.82(1), provides that "a person who assaults another person with a . . . dangerous weapon *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a felony." (Emphasis added.)

In *People v McKewen*, 326 Mich App 342, 352; 926 NW2d 888 (2018), app held in abeyance ___ Mich ___; 943 NW2d 381 (2020), we noted in the context of dual convictions for assault with intent to do great bodily harm (AWIGBH) and felonious assault:

> "Clearly, these two offenses are mutually excusive from a legislative standpoint. One requires the defendant to act with the specific intent to do great bodily harm less than murder; the other is committed without intent to do great bodily harm less than murder. We must give effect to the plain and unambiguous language selected by the Legislature. And the plain language of the statutes reveals that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet *not* intend to do great bodily harm less than murder." *[McKewen*, 326 Mich App at 352-353, quoting *People v Davis*, 320 Mich App 484, 490; 905 NW2d 482 (2017), vacated 503 Mich 984 (2019).]

As the prosecution points out, our opinion in *Davis* has since been vacated, which calls into question whether *McKewen* remains binding on this Court. However, our Supreme Court vacated *Davis* on the basis that (1) this Court reframed what was actually a "double-jeopardy argument as an issue of 'mutually exclusive' verdicts" without further addressing the double-jeopardy issue, and (2) there was nothing in the record to suggest that the *jury* concluded that the defendant in that case "acted *without* the intent to inflict great bodily harm." *People v Davis*, 503 Mich 984, ___; 923 NW2d 891, 892 (2019). The Court noted:

> [W]ith respect to [felonious] assault, the jury was *not* instructed that it must find that defendant acted *without* the intent to inflict great bodily harm. See MCL 750.81a(3); *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979) ("While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself which the people must establish beyond a reasonable doubt.") Since, with respect to the [felonious] assault conviction, the jury never found that defendant acted without the intent to inflict great bodily harm, a guilty verdict for that offense was not mutually exclusive to defendant's guilty verdict for AWIGBH, where the jury affirmatively found that defendant acted with intent to do great bodily harm. [*Davis*, 503 Mich at ___; 923 NW2d at 892.]

Thus, in light of the jury instructions and the jury's findings, the Court noted that "[r]egardless of whether this state's jurisprudence recognizes the principle of mutually exclusive verdicts, [*Davis* did] not present that issue." *Id.*

Unlike *Davis*, this case does not involve findings by the jury; this was a bench trial. See *Vaughn*, 309 Mich at 466 (noting that inconsistencies that may be permitted by a jury are not

necessarily permitted by a judge sitting without a jury).  With that in mind, we feel bound by our reaffirmation in *McKewen* that, where one verdict involves a specific intent and another involves the absence of that same intent, the "two offenses are mutually exclusive from a legislative standpoint," and a judge may not enter verdicts inconsistent with that fact.  *McKewen*, 326 Mich App at 352 (quotation marks and citation omitted).  See also *id*. at 356-357 ("[T]he court, which knows the full text of the relevant statutes, was obviously aware of the inconsistency, and it is the role of courts to ensure that the entirety of the felonious-assault statute is considered.  Failing to do so renders a portion of the statute nugatory.").[2]

The prosecution notes that *McKewen* is distinguishable because it involved a single assault on the part of the defendant, whereas this case could be said to involve multiple.  Indeed, *McKewen* involved a single stabbing that was perpetrated against the victim, while this case involves multiple stabbings.  *Id*. at 346.  *McKewen* further referred to *Davis* as having provided that: "in a case involving a *single* assault, a judgment of conviction for both AWIGBH and [felonious] assault is inconsistent because the crimes are mutually exclusive."  *Id*. at 352 (emphasis added).  We are not prepared to muddy the waters by parsing out what constitutes multiple assaults in these cases where, both here and in *McKewen*, the "assault" involved a singular transaction with the victim irrespective of whether it was one stabbing or multiple.  Certainly, that the prosecution did not charge defendant for each individual stabbing in this case weighs against their argument on appeal that, perhaps, the trial court felt one stabbing involved an intent not to murder and supported a felonious assault conviction while another stabbing occurring at the same time involved an intent to murder to support AWIM.  In *People v Tims*, unpublished per curiam opinion of the Court of Appeals, issued March 19, 2020 (Docket No. 344222), pp 1, 14. we relied on *McKewen* in noting that the defendant's verdicts were inconsistent where he was convicted of both AWIGBH and felonious assault for "savagely beat[ing]" the victim.  Presumably, that "savage" beating involved more than a single strike from the defendant, and it is at least worth noting that *Tims* was issued subsequent to the Supreme Court's order vacating *Davis*, and leave to appeal to our Supreme Court in *Tims* was thereafter denied.  *People v Tims*, ___ Mich ___; 951 NW2d 673 (2020).

---

[2] We are aware that *McKewen* is currently pending before our Supreme Court, and that, given the order vacating our original opinion in *Davis*, it is at least possible that *McKewen* could be overturned. However, in that we are not confident that the *Davis* order itself invalidates *McKewen* in its entirety, we continue to be bound by that decision.  See MCR 7.215(C)(2) ("The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals."). It is also worth noting that *McKewen* has been held in abeyance pending another decision in *Davis*, wherein the issue appears to again involve the issue of double jeopardy, and not the concept of mutually-exclusive verdicts.  *People v McKewen*, ___ Mich ___; 943 NW2d 381 (2020); *People v Davis*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2019 (Docket No. 332081), p 2, lv gtd 505 Mich 1113 (2020).

In light of the above, we feel compelled to vacate defendant's felonious assault conviction because the trial judge should have known that it was inconsistent with his AWIM conviction. We leave all other convictions undisturbed.

## III. RIGHT TO CONFRONTATION

Defendant, in his Standard 4 brief,[3] argues that the introduction of several items of evidence violated his right to confront his witnesses. Specifically, defendant asserts that the introduction of Bally's preliminary examination testimony, the video of her interview with the police, and her written statement to the police each violated the Confrontation Clause. We disagree.

At the outset, it is beyond dispute that defendant waived this issue with regard to the admission of the video of Bally's interview and Bally's written statement. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). Defense counsel took affirmative steps to introduce these items into evidence for impeachment purposes. By intentionally seeking their admission, defendant has waived any issue regarding any purported inappropriateness of their admission. See also *Czymbor's Timber, Inc v City of Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006) ("A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."), aff'd 478 Mich 348 (2007). Further, it is established that waiver *extinguishes* any error. *Carter*, 462 Mich at 215. Therefore, with defendant's waiver, there is no error to review.

It also appears that defendant waived any error in the admission of Bally's preliminary examination testimony. When the prosecutor sought to introduce the transcript into evidence, the trial court asked if there was any objection, and defense counsel responded, "No, your Honor." Although defense counsel did not actively seek the admission of the transcript into evidence, his expression of not having an objection to its admission qualifies as an expression of satisfaction and constitutes a waiver. See *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011) (holding that counsel affirmatively stating that he had no objection to the admission of certain evidence constitutes an "affirmative approval" and waiver). Therefore, any error was extinguished, leaving no error to review. *Carter*, 462 Mich at 215.

Moreover, assuming that defendant did not waive his confrontation issue with regard to Bally's preliminary examination testimony, he has failed to show how the admission of that prior testimony constituted plain error.

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), quoting US Const, Am VI. The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial. *Crawford v Washington*, 541 US 36; 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). However, only those statements that are "testimonial" are implicated by the Confrontation Clause. *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d

---

[3] A pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

224 (2006); *People v Walker (On Remand)*, 273 Mich App 56, 60; 728 NW2d 902 (2006). Bally's testimony at the preliminary examination qualifies as testimonial. See *Crawford*, 541 US at 68 (stating that whatever else the term "testimonial" covers, it applies to prior testimony at a preliminary hearing). But as the United States Supreme Court has held, the admission of prior testimony is compliant with the Confrontation Clause as long as (1) the witness is unavailable for trial, and (2) was subject to cross-examination during the prior proceeding. *Id*.; see also *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). In this instance, there is no dispute that Bally was unavailable at trial because she had died some months before. It also is undisputed that Bally was subject to cross-examination, and indeed was cross-examined, at the preliminary examination. Therefore, the admission of her prior testimony at trial did not violate the Confrontation Clause, and defendant has failed to demonstrate any error.

## IV. DUE PROCESS

In his Standard 4 brief, defendant asserts that he was denied due process at various instances during the lower court proceedings. Because defendant never claimed in the trial court that he had been deprived of due process, the issue is not preserved. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We review unpreserved constitutional issues for plain error affecting substantial rights. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018).

Defendant first argues that he was denied due process on account of the prosecution's failure to disclose evidence favorable to him. We disagree.

A criminal defendant has a due-process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish such a due-process violation, a defendant must prove the following: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Favorable evidence is evidence that is exculpatory or impeaching. *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary* (11th ed). And "[t]o establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Chenault*, 495 Mich at 150, quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

Defendant claims that the prosecution failed to disclose (1) Bally's bank records for her personal checking account for the month leading up to the stabbing; (2) the clothes defendant wore at the time of the stabbing; and (3) all text messages sent by Bally to defendant from April 2018 through July 12, 2018. On December 18, 2018, the trial court ordered the prosecution to provide copies (or inspection) of, *inter alia*, these very items.

At a March 11, 2019 hearing, defense counsel noted that he had received information pertaining to Bally's personal checking account for the months of May and June 2018, but nothing for July 2018. The prosecutor stated that she had recently obtained those records and thought she had forwarded them to defense counsel, but would double-check. After defense counsel reiterated

that all he needed were the checking account records from July, the trial court noted that the prosecutor said she would provide them, which would resolve that issue from the discovery order. Notably, at the next two pretrial hearings, when the trial court asked about any discovery issues, defense counsel never mentioned not receiving the July 2018 records. Therefore, the only logical inference is that the prosecution had indeed supplied copies of the July 2018 records to defendant. Simply put, the record does not support defendant's assertion that Bally's personal checking records had not been disclosed to him.

Regarding defendant's clothing, at a July 9, 2019 hearing, defense counsel stated:

I can quickly put on the record that *my client's clothes*, which were in his property, which may be evidence in the case[,] *have been obtained by the standing in officer-in-charge, who is here today*. The standing in officer-in-charge also has cell phones that were recovered from the scene, and has a cell phone record from the cell phone that I believe will establish facts that we think are important to the case.

I can't have the disks that they're on until he reviews it to make sure that there's nothing on it that's inappropriate. *And so we've got those two things done*. [Emphasis added.]

From defense counsel's description, it appears that the officer-in-charge brought defendant's clothing to the hearing for the purpose of allowing defense counsel to review the evidence, which, in counsel's mind, resolved that particular issue. At a minimum, the record demonstrates that the clothes were available for defendant to inspect and that defense counsel was satisfied that the issue had been resolved. Therefore, contrary to defendant's assertions, the record shows that the clothing was not suppressed from defendant.

Regarding the text messages sent by Bally to defendant from April 2018 through July 2018, this topic was addressed at a hearing that was conducted on the morning the bench trial started. At the hearing, Det. Jonathan Huerta, who conducts cell phone examinations, explained that he had received three different cell phones that had been seized in this case. The three cell phones were a Samsung phone, an LG phone, and a T-Mobile phone. He was only able to extract data from the LG phone. Det. Huerta explained that he was not able to retrieve any information from the Samsung phone because he and his team were not able to defeat the PIN code with their forensic tools. Det. Huerta also said that the T-Mobile phone was not forensically examined because the data port on the phone was inoperable. However, Det. Huerta was able to simply view the contents of the T-Mobile phone and take screenshots of some of the content, including the contacts, the call logs, and message logs. Defense counsel at the hearing admitted that he had received information from two of the cell phones. Det. Huerta was able to confirm that the information was the data extraction from the LG phone and the screenshots from the T-Mobile phone. Regarding the T-Mobile phone, the only text messages reflected in the screenshots were from July 13, 2018, after the stabbing incident. When asked why there were no prior messages, Det. Huerta opined that either no messages were sent before that time or the user of the phone had deleted them. Det. Huerta testified that he did not delete any data from the phone.

Defendant's primary issue with the text messages is that he maintains that text messages were sent from July 5 (when the phone was purchased) through July 13, but for some reason, the police were only able to retrieve text messages from July 13. But defendant has failed to show that this information was "suppressed." Det. Huerta testified that when he examined the phone, there were no text messages preceding July 13 to view and that he did not alter the phone's data in any manner. The trial court found Det. Huerta credible. This Court is to defer to the trial court's superior ability to ascertain and weigh the credibility of witnesses. See *People v McElhaney*, 215 Mich App 269, 278; 545 NW2d 18 (1996); *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990). Therefore, because the record shows that all the information available to the prosecution and the police had been turned over to the defense, defendant cannot show plain error.[4]

Defendant also argues that he was denied due process when the prosecutor elicited perjurious testimony from Bally. We disagree.

"It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009), citing *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959); *Pyle v Kansas*, 317 US 213, 216; 63 S Ct 177; 87 L Ed 214 (1942); *Mooney v Holohan*, 294 US 103, 112; 55 S Ct 340; 79 L Ed 791 (1935). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Aceval*, 282 Mich App at 389 (quotation marks and citations omitted).

Defendant cannot prevail on this issue for several reasons. In his Standard 4 brief, defendant does not identify specifically which portion(s) of Bally's testimony was purportedly perjurious. To the extent that defendant alleges that Bally had lied about the fact that defendant had just appeared "out of the blue" and that there had been no communication between the two of them leading up to the stabbing, the trial court recognized that this portion of Bally's testimony was demonstrably false. Therefore, with the court knowing that these statements were false, there was no reasonable likelihood that the false testimony adversely affected the judgment of the trial court, as the finder of fact. And, to the extent that defendant suggests that Bally lied about how the stabbing occurred, there is nothing other than defendant's own self-serving testimony to refute what Bally said. As such, it is not clear that this portion of Bally's testimony was false or perjurious. Moreover, assuming Bally lied about how the stabbing occurred, there is nothing in the record to indicate that the prosecution knew that this testimony was false. In other words, defendant cannot prevail because he cannot show that Bally's testimony regarding the stabbing was actually false and, even if it were false, that the prosecution knowingly elicited the false

---

[4] We further note that, to the extent that defendant may be arguing that the police should have taken other steps to defeat the PIN code on the Samsung phone, due process does not require the police to seek and find exculpatory evidence. *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). The key is whether any evidence was suppressed. *Chenault*, 495 Mich at 155. That all of the information the police uncovered from the phones was turned over to the defense obviates any claim of suppression.

testimony. See *id*. (stating that it is the "knowing use of perjured testimony" that violates due process).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues in his Standard 4 brief that he was denied his right to the effective assistance of counsel. We disagree.

Generally, claims of ineffective assistance of counsel involve a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings for clear error, and any constitutional determinations are reviewed de novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because no evidentiary hearing was held, our review of this issue "is limited to mistakes apparent on the record." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Aceval*, 282 Mich App at 386. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *LeBlanc*, 465 Mich at 578. Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defendant's argument on appeal as it relates to this issue is unclear. In his brief, defendant states:

> Mr. Gardner argues the facts to prove this [claim] are; (1) Ms. Bally overdosing before trial could not cross-exam Complaintant [sic] of all her lies and the real facts of the case to prove Mr. Gardner's innocence; (2) suppression of evidence and evidence not present[ed] by prosecutor and defense counsel; (3) failure by defense counsel to file motion in timely fashion when Ms. Bally died to get evidence that was order[ed]; (4) failure to call witnesses to be subspoena [sic] on behalf of defense, to show that Complainant has lied to other law enforcement officials before, lied to other people to acquire items by false pretense and show that Mr. Gardner was living at condo; and (5) failure to adequately investigate the defendant's claim. [Citations omitted.]

Out of the five items listed, only the last three arguably speak to how defense counsel allegedly provided ineffective assistance.[5]

---

[5] The first two items cannot amount to ineffective assistance. First, that counsel could not cross-examine Bally at trial due to Bally's death was not counsel's fault. Second, we fail to see how counsel could ever be responsible for failing to introduce evidence that was allegedly suppressed by the prosecution.

Regarding the first of the last three items that arguably address counsel's deficient performance, defendant claims that counsel failed to timely file a motion "to get evidence that was order[ed]." Defendant does not explain what type of motion counsel should have filed, or to which evidence he is referencing. As such, we deem this aspect of his issue abandoned for failure to properly brief it. See *People v Smith*, 439 Mich 954 (1992). Moreover, assuming arguendo that defendant is referring to filing a motion in order to obtain the evidence described in the trial court's December 18, 2018 pretrial discovery order, defense counsel did take numerous steps throughout the pretrial proceedings to ensure that the prosecution complied with the order. These pretrial conferences led up to a hearing on compliance, in which the trial court ruled that the prosecution had indeed complied with the order. Defendant cannot show that an additional motion would have resulted in a different outcome.

Next, defendant suggests that his trial counsel was ineffective for failing to call certain witnesses to testify at trial. However, defendant does not identify these witnesses or explain to what they may have testified. Thus, again, defendant cannot show that counsel's failure to call the unnamed witnesses fell below an objective level of reasonableness, nor that there would have been a reasonable probability that defendant would have been acquitted had the witnesses been called.

Lastly, and similarly, defendant suggests that trial counsel failed to adequately investigate the case. Defendant does not explain how counsel's investigation was inadequate or what more counsel should or could have done. Consequently, defendant has failed to overcome the strong presumption that counsel performed effectively and investigated adequately.

We vacate defendant's felonious assault conviction, but otherwise affirm in all aspects.


/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-10-