#28472, #28485-a-JMK
**2019 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CARSFORSALE.COM, INC.,                    Plaintiff and Appellant,

    v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE,                                       Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRADLEY G. ZELL
Judge

\* \* \* \*

SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert
  & Garry, LLP                                     Attorneys for plaintiff
Sioux Falls, South Dakota                    and appellant.


JOHN T. RICHTER of
South Dakota Department
  of Revenue                                         Attorneys for defendant
Pierre, South Dakota                           and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
OCTOBER 1, 2018
OPINION FILED **01/09/19**

KERN, Justice

[¶1.]        The South Dakota Department of Revenue (Department) issued Carsforsale.com (Carsforsale) a certificate of assessment for alleged use tax violations.  Carsforsale filed a formal objection to the audit.  A hearing was held on the objection before the hearing examiner, who recommended reversing the certificate of assessment.  The Department, through its Secretary, rejected the hearing examiner's proposed decision and reinstated the certificate in its entirety.  Carsforsale appealed to the circuit court, which affirmed the Department's decision in part and reversed in part.  Carsforsale appeals.  We affirm.

## Facts and Procedural History

[¶2.]        Carsforsale is a web-based business that offers dealers and individuals an online forum to advertise their vehicle for sale.  Carsforsale also provides other services, "such as a vehicle research database, social media integration, website hosting, an inventory management tool, lead and data management solutions, search engine optimization, and custom dealership websites."  Carsforsale charges $99 per month to car dealers to upload and display their inventory.  Dealers create their own listings and may include a link for shoppers to go directly to the dealer's website.  At no additional cost, Carsforsale builds websites for dealers who do not have their own websites.  Private sellers may create their own listings for free.

[¶3.]        On April 13, 2015, the Department began an audit of Carsforsale's records to determine whether sales and use taxes were properly reported for the January 2009 through December 2014 reporting periods.  The audit determined that Carsforsale had no sales tax liability.  However, the audit revealed suspected

use tax errors related to transactions in which Carsforsale had not paid use tax on its purchases of tangible personal property or for services in which sales tax had not been charged to Carsforsale. The auditor created a list of disputed transactions. Upon request Carsforsale provided more information, including invoices, to the auditor, and the auditor adjusted the list of suspected transactions. On September 11, 2015, Carsforsale indicated there was no further documentation to provide and the audit was finalized. The Department issued a certificate of assessment to Carsforsale in the amount of $250,479.61. The tax was $187,905.71, interest was $57,849.50, and the penalty was $4,724.40.

[¶4.] Carsforsale objected and requested an administrative hearing. The hearing examiner heard testimony from the owner of Carsforsale and its accountant regarding its business model and the purpose of the disputed transactions, as well as testimony from the Department's auditor. Based upon that testimony, the hearing examiner proposed that the certificate of assessment be reversed. The examiner characterized Carsforsale as "an internet advertising agency" and "like a classified ad section." The examiner determined that the out-of-state services, such as "cloud services, anti-virus software, and contract labor," purchased by Carsforsale without payment of sales tax were vital services needed to carry out its advertising business. Therefore, the examiner held that these purchases were "made by [Carsforsale] for preparing and placing advertising on the internet" and were "not taxable" under ARSD 64:06:02:03. The examiner deemed exempt Carsforsale's purchase of domain names from GoDaddy.com as an advertising

service provided to its "customers [to] prepare and place the websites on Carsforsale.com."

[¶5.]        The Department, through its Secretary, rejected the examiner's proposed decision as "incomplete" and issued its final decision reinstating the certificate of assessment.  It found that Carsforsale was not entitled to the advertising exemption on the disputed services because "[t]here [was] nothing in the record that evidences that Carsforsale used any of the above tangible personal property or services it purchased to assist it in completing . . . the listings on its website."  Further, the Department found that "Carsforsale has produced no evidence to show that the tangible personal property or services Carsforsale purchased were used to prepare an advertisement and place it in the media."  It also determined that Carsforsale failed to prove that it was entitled to the advertising exemption because it did not furnish service providers with exemption certificates as required by ARSD 64:06:02:03.

[¶6.]        The Department dismissed Carsforsale's argument that the purchases of domain names from GoDaddy.com were exempt under the sale-for-resale exemption of ARSD 64:06:01:08.03 because it found "Carsforsale does not resell any of the services in this matter."  Additionally, it noted that "the services are not purchased on behalf of a current customer, are used by Carsforsale, and the services are not delivered or resold to the customer without any alteration or change."

[¶7.]     Carsforsale appealed to the circuit court, which affirmed the Department in part and reversed in part.[1]  Carsforsale appeals, raising the following issues for our consideration:

    1.    Whether Carsforsale is entitled to the advertising tax exemption.

    2.    Whether Carsforsale is entitled to the sale-for-resale tax exemption.

    3.    Whether Carsforsale was required to present an exemption certificate to out-of-state vendors to exercise exemptions from use tax.

**Standard of Review**

[¶8.]     We review administrative appeals pursuant to SDCL 1-26-37.  *Valley Power Sys. v. S.D. Dep't of Rev.*, 2017 S.D. 84, ¶ 9, 905 N.W.2d 328, 330.  "Whether a statute imposes a tax under a given factual situation is a question of law and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court."  *Dep't of Revenue v. Sanborn Tel. Coop.*, 455 N.W.2d 223, 225 (S.D. 1990).

**Analysis and Decision**

    1.    *Whether Carsforsale was entitled to the advertising tax exemption.*

---

1.    The circuit court affirmed the Department's imposition of use tax on all the contested transactions, except for physical storage in Minnesota provided by Visi.  The court determined that because these services were provided outside of South Dakota, they were exempt from use tax.  The Department does not appeal this determination.  There are also several use tax assessments on purchases of certain tangible goods by Carsforsale that Carsforsale no longer contests on appeal.  We do not address any of these transactions in this decision.

[¶9.]      SDCL 10-45-4 imposes a tax "upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered . . . unless the service is specifically exempt . . . ." A "service" is defined in part as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property." SDCL 10-45-4.1. To determine what constitutes "a service, the intended use, principle objective or ultimate objective of the contracting parties shall not be controlling." *Id.* For those services and tangible personal property purchased by a taxpayer on which no sales tax was paid, use tax is owed. SDCL 10-46-2; SDCL 10-46-2.1.

[¶10.]      However, certain services, including "advertising services," are specifically exempt from taxation.[2] SDCL 10-45-12.1. An advertising service is defined by ARSD 64:06:02:03,[3] which provides:

> Advertising services are the business of preparing advertisements for publication in newspapers, magazines, placemats, billboards, or handbills or for broadcast and welcoming services which contact new residents and others to

---

2.    The Department acknowledged during its audit that Carsforsale owed no sales tax on the revenue paid by dealers to Carsforsale. It determined these monthly payments were for the placement of advertising by dealers on Carsforsale's website.

3.    The circuit court found that "the legislature has not by code specifically defined or limited advertising services and has not delegated that specific authority to the Department." While it is true that advertising services are not defined by statute, the legislature has granted the secretary of revenue the authority to promulgate rules "[d]etermining the application of the tax and exemptions" under SDCL 10-45-47.1(3) for sales tax and SDCL 10-46-35.1(3) for use tax. "Administrative rules have the force of law and are presumed valid." *Krsnak v. S.D. Dep't of Env't & Nat. Res.*, 2012 S.D. 89, ¶ 16, 824 N.W.2d 429, 436. Therefore, the definition of "advertising services" in ARSD 64:06:02:03 applies in this case.

> explain business services within the area and leave promotional literature.
>
> Charges for advertising in newspapers or magazines are not taxable. Likewise, charges made by advertising agencies *for preparing and placing advertising in advertising media* are charges for services and therefore not taxable.
>
> Services purchased by the agency to assist it in completing a project for a current customer are not subject to tax if the service is an integral and inseparable component of the ultimate service to its customer and the agency provides the service provider with an exemption certificate. Examples of services that may be considered for resale if they are an integral and inseparable part of the final product are art work, proofreading, copywriting, handlettering, photo finishing, modeling, photography, production studio rental, photo studio rental, video studio rental, audio studio rental, prop rental, music rights, sound effects, dubbing, typesetting, color separation, keylining, illustration, retouching, air brushing, silk screening, and editing.
>
> Sales tax applies to gross receipts from sales of tangible personal property and any product transferred electronically to persons providing advertising services for use and consumption in preparing advertisements. Tax applies to the following: paper, ink, paint, tools, office supplies, type, and charges by printers for production of pamphlets, booklets, brochures, and other material printed by them.

(Emphasis added.) SDCL 10-46-17.3 exempts the services enumerated in SDCL 10-45-12.1 from use tax.

[¶11.]     Although we construe statutes imposing tax liberally in favor of the taxpayer, "[s]tatutes exempting property from taxation should be construed in favor of the taxing power." *Butler Mach. Co. v. S.D. Dep't of Revenue*, 2002 S.D. 134, ¶ 6, 653 N.W.2d 757, 759. Exemptions "should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption." *K Mart Corp., Inc. v. S.D. Dep't of Revenue*, 345 N.W.2d 55, 57 (S.D. 1984). The party seeking an

exemption has the burden to prove it fits into that exemption. *In re Pam Oil, Inc.,* 459 N.W.2d 251, 255 (S.D. 1990).

[¶12.]      Here, Carsforsale groups the disputed transactions into two broad categories: domain and web-hosting services, and website-creation and publication expenses. Regarding the domain and web-hosting services, Carsforsale argues that the purchase of domain names "are qualitatively the same as an advertising agency buying air time for a TV or radio commercial, or column space for a newspaper advertisement . . . . Without a domain name, website content cannot be publicly viewed and purchase of a domain name is essential to publication." Carsforsale also identifies various website-creation and publication expenses, such as "cloud storage, cyber security software and 1099 labor as part of exempt production costs." It argues that these are "integral and inseparable component[s] of the service" under the third paragraph of ARSD 64:06:02:03 because these services maintain the functionality of the Carsforsale website.

[¶13.]      To determine whether the Department erred, we focus on the disputed transactions, not on the character of Carsforsale's business or on Carsforsale's grouping of the transactions into categories. *See Sioux Falls Newspapers, Inc. v. Sec'y of Revenue*, 423 N.W.2d 806, 808 (S.D. 1988) (The focus of the analysis is on the "*transactions* and not the character of the participants . . . ."). Indeed, Carsforsale carries the burden of proving that each disputed transaction is exempt from taxation. Those transactions include: Amazon Web Services for web hosting, DataOne transactions for access to a vehicle identification number database, Desiree Bell transactions for software development services, Distil Network

transactions for security services, FRSecure, LLC transactions for security services, Prolexic transactions for security services, Spruce Creek Software transactions for software development services, Web Hosting Visi transactions for web-hosting services, and GoDaddy.com transactions for the purchase of domain name registration services. According to the Department, Carsforsale failed to show that it "used any of the disputed services to assist it in completing a project for a current customer, to prepare vehicle listings, or to publish the vehicle listings on its website." We agree.

[¶14.]     From our review of the evidence related to each of the disputed transactions, Carsforsale has not met its burden of proving that it used the disputed services to assist a customer in completing an advertising project, in preparing the vehicle listings, or in publishing the listings on the website. Carsforsale presented no evidence it used the disputed services to prepare and place the dealer's listings on their website. *See In re Sales and Use Tax Refund Request of Media One*, 1997 S.D. 17, ¶ 19, 559 N.W.2d 875, 880 (concluding that an exemption under ARSD 64:06:02:03 "requires the advertising agency to both prepare the advertisement and place it in the advertising media"). Instead, dealers themselves prepare advertisements after Carsforsale provides them with a username and password. The evidence establishes that the services involved in the disputed transactions were used to create and maintain Carsforsale's website and operating systems.

[¶15.]     Whether the advertising exemption applies when Carsforsale purchases domain names and builds websites at no additional cost for its customers

is a separate consideration. Testimony at the administrative hearing from Sean Coffman, Carsforsale's owner, reveals that the exemption would not apply:

> [MR. NICHOLS]: And then how about on the customers' external website? How is inventory managed there?
>
> [COFFMAN]: The 99 percent of the websites that we would build for a dealer would be hand-entered into our system, and then when it hand-enters in the system, it would update on their own website and would also update on Carsforsale.com.
>
> [MR. NICHOLS]: And who hand-enters that data, you or –
>
> [COFFMAN]: That would be the dealer.

The testimony confirms that the dealers prepare and place their own inventory after Carsforsale builds the website. Carsforsale has failed to meet its burden of demonstrating the transactions fit within an exemption and the circuit court was correct in affirming the Department. *See Pam Oil, Inc.,* 459 N.W.2d at 255.

> 2. *Whether Carsforsale was entitled to the sale-for-resale tax exemption.*

[¶16.]      Carsforsale next argues that in addition to the advertising exemption, it is entitled to the sale-for-resale exemption under ARSD 64:06:01:08.03 for the cost of purchasing domain name registration services from GoDaddy.com.[4] ARSD 64:06:01:08.03 provides:

> Services which are purchased by a service provider and delivered to a current customer in conjunction with the services contracted to be provided to the customer are considered to be for resale. Receipts from the sale of a service for resale by the purchaser are not subject to sales tax if the purchaser furnishes an exemption certificate.
>
> In order for the transaction to be a sale for resale, the following conditions must be present:

---

4.      ARSD 64:06:01:08.03 applies to use tax as it was promulgated under the general authority of SDCL 10-46-35.1(3), which grants the Department authority to determine "the application of the tax and exemptions."

(1) The service is purchased for or on behalf of a current customer;

(2) The purchaser of the service does not use the service in any manner; and

(3) The service is delivered or resold to the customer without any alteration or change.

[¶17.] Carsforsale "registers domain names from GoDaddy.com for a fee." These "domain names are used to host the advertised content for [Carsforsale's] customers." Carsforsale maintains that it "makes no use of the domain name or the website . . . . [Carsforsale] solely functions as the artist who produces the final product for its customer in a publishable form." Carsforsale likens itself to a "middleman" who "will acquire a service and pass it on to a customer."

[¶18.] To determine whether Carsforsale is entitled to the sale-for-resale exemption we apply the provisions of ARSD 64:06:01:08.03. Carsforsale complies with the first element in that the service is purchased "on or behalf of . . . current customer[s]" who pay the monthly $99 fee and request that Carsforsale build a website for them. But Carsforsale fails to satisfy the second and third elements. Carsforsale, rather than passing along the domain name alone, uses the domain name to build a website. Although Coffman testified that "I'm not getting anything[,] I don't own anything[,]" the record establishes that these domain names remain registered in his name after the website is built. Carsforsale customers never become the owners of the domain names and the domain names are never sold to the customers. The circuit court did not err in affirming the Department's imposition of use tax for these transactions.

**Conclusion**

[¶19.]     Our decision is based on the application of statutes and administrative regulations designed for "traditional" media, e.g. print and television.  As such, we acknowledge that these rules were likely not written with internet-based businesses such as Carsforsale in mind.  Accordingly, these outdated laws may engender inconsistent results when courts are faced with applying the laws to new technologies.  It would be of significant benefit to the courts and taxpayers if the legislature or the Department enacted statutes or rules appropriate for internet-based media.  *See Wheeler v. Farmers Mut. Ins. Co. of Neb.*, 2012 S.D. 83, ¶¶ 32-35, 824 N.W.2d 102, 110-11 (Zinter, J., concurring specially).  The influence of the internet and the new business models it makes possible will continue to shape a new economic reality.  "States can and should consider those realities in enacting and enforcing their tax laws." *S.D. v. Wayfair, Inc.*, __ U.S. __, 138 S. Ct. 2080, 2095, 201 L. Ed. 2d 403 (2018).

[¶20.]     We affirm the circuit court's decision affirming in part and reversing in part the Department's decision.  Because Carsforsale's contested transactions did not qualify for these exemptions from use tax, we decline to address whether Carsforsale was required to produce exemption certificates.

[¶21.]     GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, concur.